# BOARD OF SUPERVISORS OF MACOMB COUNTY *v.* LOVEJOY.

1. TRIAL—RECEPTION OF EVIDENCE—PURPOSE OF INTRODUCTION—EFFECT.

 Where, in an action against a former county treasurer for a balance which it is claimed he failed to turn over to his successor, defendant's ledger, containing records of disbursements, is placed in evidence by him, the fact that his counsel disclaim any intention of proving what disbursements were made does not prevent the consideration of the ledger for that purpose.

2. SAME—INSTRUCTIONS—CONSIDERATION OF EVIDENCE.

 The charge of the court is not subject to the objection that it did not allow the jury to consider the ledger as evidence of disbursements, the court having stated that the jury should consider whether any receipts showing disbursements by defendant had been lost which had not been entered on the ledger, because, if they had been so entered, evidence of them remained in the form of the ledger which had been admitted in evidence.

3. COUNTIES—TREASURER—DEFALCATION — STATE OF ACCOUNTS—RECEIPTS AND DISBURSEMENTS—BURDEN OF PROOF.

 In an action against a former treasurer for a balance which it was alleged he had failed to turn over to his successor, there was evidence that during defendant's term of office certain settlements were had, after which evidence of receipts and disbursements which defendant claimed did not appear in his books of account was destroyed. Plaintiff board of supervisors claimed, and there was evidence justifying a finding, that these settlements were erroneous and fraudulent, and did not include all the receipts. Plaintiff introduced all the evidence of disbursements it could procure. *Held*, that thereafter the burden was on defendant to prove further disbursements, if there were any.

Error to Macomb; Law, J., presiding. Submitted January 10, 1906. (Docket No. 44.) Decided April 3, 1906.

Assumpsit by the board of supervisors of Macomb county against Gil. R. Lovejoy, principal, and the American Bonding & Trust Company, surety, on a county treasurer's bond. There was judgment for plaintiff, and defendant Lovejoy brings error. Affirmed.

*S. B. Spier* and *J. A. Weeks*, for appellant.

*Frank C. Kuhn* (*Seth W. Knight* and *Oscar C. Lungerhausen*, of counsel), for appellee.

OSTRANDER, J. Defendant Lovejoy was for two terms county treasurer of Macomb county, having been elected in 1898 and again in 1900. The American Bonding & Trust Company is surety upon his official bonds. The declaration counts specially upon both bonds and contains, also, the common counts in assumpsit. The breaches of the bonds alleged are failure on the part of the treasurer to account and failure to pay over to his successor moneys in his hands. Upon demand of defendants, a bill of the particulars of plaintiff's demand was furnished, which fills 37 pages of the record, and which attempts to itemize only the money received by the treasurer. It concludes with the statement that plaintiff admits that the defendant Lovejoy, as county treasurer, disbursed the sum of $584,627.60, and turned over to his successor $2,200. Defendant Lovejoy moved the court for an order requiring a further bill of particulars to be furnished, stating in greater detail the moneys claimed to have been received by the treasurer and itemizing the disbursements. An order was made requiring plaintiff to specify with greater certainty certain moneys claimed to have been received, but the court declined to order specification of the moneys disbursed, stating as a reason that the law requires the treasurer to keep a complete set of books showing the receipts and disbursements of the office. Thereupon what was styled an amendment to the bill of particulars was furnished. The total of moneys claimed in the particulars to have been paid to the treasurer is $597,822.56. De-

fendant Lovejoy thereupon pleaded the general issue, with notice that he would show that at various dates stated, seven in number, he made settlements with plaintiff, at each of which there was a full accounting and settlement; that plaintiff took from him all his receipts and vouchers used in said several settlements and destroyed them; that there had been full accord and satisfaction between the parties. No witnesses were sworn on the part of the defendants, but, in the course of the cross-examinations of various of plaintiff's witnesses, evidence, for the most part documentary, was introduced, tending to prove both the receipt and disbursement of money, no account of which appeared upon the ledger kept by defendant. A substantial judgment for plaintiff resulted.

The writ of error, which is sued out by defendant Lovejoy alone, has brought here a printed record of more than 400 pages, upon which record 117 errors are assigned. Before proceeding to a discussion of errors, attention is paid to an assertion, many times repeated in the briefs for appellant, which, as an alleged or assumed fact, is the major premise in most of the propositions stated and discussed by counsel for appellant. In the statement of facts, it appears in this form:

"On the trial, plaintiff's testimony consists of showing Mr. Lovejoy's receipts as county treasurer from all sources during his four years' incumbency of the office."

In other portions of the brief are to be found the following:

"In the case at bar, plaintiff's counsel were content to prove the receipts, and introduced no evidence of the disbursements, evidently being under the impression that their duty ended with proof of receipts. * * *
"The plaintiff, in the bill of particulars filed, 'conceded that Mr. Lovejoy during the four years paid out the sum of $584,627.60.' This concession was treated by both counsel for plaintiff and the court as evidence."

It is undisputed that defendant Lovejoy kept in his office a ledger. This ledger shows that he disbursed, as

treasurer, various sums of money. It was his official ledger. It and a cashbook and a book called the "sparrow ledger," containing a single account, were the only books of account which he kept. The cashbook was not turned over to his successor, and was not produced at the trial. There was evidence warranting the jury in finding that this cashbook was a record of county business, though kept primarily for the benefit or the intelligence of the treasurer. The ledger was put in evidence by counsel for plaintiff to show cash received. Later, it appears:

" Counsel for defendant Lovejoy offer in evidence the whole of the so-called Lovejoy ledger, Exhibit 9.

" *The Court:* It may be received."

This occurred during the cross-examination of Lovejoy's successor in office. This was the book used in the various settlements with the board of supervisors. It is true that, upon various occasions during the trial, counsel for defendants disclaimed, and do now disclaim, any attempt to give evidence touching disbursements made by their client, and asserted that evidence offered by them which tended to prove disbursements was offered only to show the manner in which accounts were kept or settlements made or to prove that the ledger did not, in fact, show all receipts and disbursements of the office. This did not prevent the book and the other documents from being used, for all proper purposes, as evidence. The court and counsel for plaintiff used them as evidence of disbursements. Counsel for defendant do not challenge any entry appearing in the ledger showing disbursements; their client has had the benefit of disbursements therein shown. It is also stated in the brief for appellant that no computation of the sum total of the disbursements shown by the ledger was offered. Whether this is so or not, the total was stated in the court below, went to make up the figures which were submitted by the court to the jury, and it was not at the trial and is not now claimed that it

was not a true statement. The criticism of the charge to the effect that the court did not treat, nor allow the jury to consider, the ledger as evidence of disbursements made by the treasurer appears to be wholly unwarranted. The court said to the jury:

"You should also consider whether any receipts or other papers showing the disbursements of money by defendant Lovejoy have been lost which are not entered on the ledger, because if these papers are so entered, evidence remains of them which is already in the case as the whole ledger has been admitted in evidence."

It is not reasonably possible that counsel or the jury were laboring under any misapprehension of the position of counsel for plaintiff or that it was not understood, by all interested in the trial, that the ledger account of disbursements was used as evidence of such disbursements.

The main contentions of appellant are four in number, and, broadly stated, they are:

1. That it is incumbent upon plaintiff to prove the breaches of the bonds alleged and resulting damage, which involves proof that the total of moneys disbursed by the treasurer was smaller than the total of the sums received by him.

2. That the evidence clearly discloses that the ledger of the treasurer was not kept in a manner to show all receipts or all disbursements; that various other papers, vouchers, and receipts were the sole evidences of certain receipts and disbursements, which papers, receipts, and vouchers, or some of them, were taken from the custody of the treasurer by the authority of the board of supervisors, some of them destroyed by like authority, some of them deposited with the county clerk; that these last-mentioned facts appearing, defendant was, in any event, excused from assuming any burden of showing his disbursements.

3. The plaintiff has not introduced evidence to show that it has made all the proof of disbursements possible— has exhausted evidence thereof which is in its possession.

4. The court failed properly to appreciate and properly to instruct the jury concerning these matters.

In the course of the cross-examination of plaintiff's witnesses, the fact of the various settlements with the treas-

urer was made to appear. The reports of the committees made to the board of supervisors are set out in the record. It also appeared that, following a custom, the committee of the supervisors which settled with the treasurer burned various of the papers examined, and that certain vouchers and receipts were periodically deposited with the county clerk. The fact of the several settlements having been made to appear, the conclusiveness, if not the honesty, of each of them was attacked by testimony, which is not disputed, tending to show that the treasurer had in none of them truthfully reported the receipts of his office. Testimony was also introduced tending to show that no receipts or vouchers were destroyed, representing any matters not entered upon the ledger. No question seems to be raised concerning the amount of the total receipts of the office, the evidence of which was entirely documentary. It appearing that certain disbursements were made which did not appear upon the ledger, they were added, to the amount of over $58,000, to the sum shown by the ledger to have been disbursed.

In the course of a lengthy, painstaking, and carefully-considered charge, the court said to the jury:

"In this case, no presumption arises that the defendant Gil. R. Lovejoy has not legally disbursed or paid over to his successor all sums of money which came into his hands as county treasurer; and the burden of proof is upon the plaintiff to show the amount of money now remaining in his hands as such county treasurer for which he should account, if any such amount exists, or else to show such a breach of the condition of the bonds as in law casts the burden of evidence showing defendant Lovejoy's disbursements upon the defendants.

"The defendant treasurer had a perfect legal right to receive money into his hands, and it was his duty to receive it, and then it was his duty to account for it. The plaintiff must not only show that he received the money, but, by a fair preponderance of the evidence, that he has failed to account for it.

"Under the pleadings in this case, there can be no verdict rendered by you against the treasurer or his surety for

any money that he ought to have collected, but did not collect; hence there can be no recovery under the last count of plaintiff's declaration, which attempts to charge a failure to receive and collect money. There can be no recovery in this case except for failure to account for and pay over public moneys received by defendant Lovejoy.

" By the law, it is made the duty of the board of supervisors as often as once a year to examine the accounts of the county treasurer, and to ascertain and enter upon their records a full statement of such account. It is provided by law that, at the annual meeting of the board of supervisors, or at such other time as they shall direct, the county treasurer shall exhibit to them all his books of account, and all vouchers relating to the same, to be audited and allowed.

" It appears in evidence that a committee of supervisors, appointed from the board of supervisors, settled with the defendant treasurer in the months of March and October, 1899, in the months of March and October, 1900, in the months of March and October, 1901; also in the month of March, 1902, making seven settlements in all. And that reports of the different committees which made such settlements were adopted by the board of supervisors. These settlements are in evidence, and both defendants rely upon them, and claim them to be correct, or, at least, to be binding upon the plaintiff in this case. As to these settlements, I say to you, as a matter of law, that the presumption is that they were fair and honest. The law provided that the board of supervisors shall settle with the county treasurer, and that he shall exhibit to them all his books of accounts and all vouchers relating to the same, to be audited and allowed; and the presumption is that each one of these settlements thus effected was a proper settlement; that all sums of money which he had received were charged to him, and that he received credit for all sums of money disbursed by him, and that he presented his books of account and all his vouchers relating to the same to be audited and allowed. It is also a presumption of law that the balance arrived at was a true statement of the account between the treasurer and the county.

" The plaintiff claims in this case that each one of these settlements was incomplete and incorrect, and the burden of proof is upon the plaintiff to prove this claim to you by a fair preponderance of the evidence. The presumption of law that these settlements were correct is not conclu-

sive. These settlements are only binding upon the plaintiff and upon the county of Macomb as to the then existing state of account when there has been no fraud or concealment on the part of the parties and no error, omission, or mistake in the settlement. When they come into this case they are to be taken by you as prima facie correct. But if the plaintiff has satisfied you by a fair preponderance of the evidence that these settlements, or any of them, are incorrect, for any of the reasons I have given you, then the settlements so found to be incorrect are no longer binding upon the plaintiff; however, they are still evidence, but not prima facie evidence, of the state of the account between the county and the defendant Lovejoy.

"The first question I shall submit to you is that of the correctness or incorrectness of these settlements. If you find any settlement to be correct and complete, under the instructions I have given you, then you are to take that settlement as showing the then true state of the account between the county and the defendant Lovejoy, unless you find such settlement is incorrect by reason of a false balance being carried into it from a former settlement. If you find these settlements to be correct and complete, then you cannot go back of the last one reported as of the date of March 4, 1902, and there will be no indebtedness to be found by you prior to that time and no breach of the condition of the bonds prior to that time. But if you find one or all these settlements to be incorrect or incomplete under these instructions, as to such settlement or settlements, you are authorized to go back of it or them and determine the true state of the account from other testimony; but if you find that the last settlement of the series of the March settlement of 1902 shows the correct state of the whole account as it should be and gives a balance which is a correct balance of the account from the beginning of the first term of defendant Lovejoy to that time, then you cannot go back of this settlement. But upon this question you will notice that the plan of these settlements is to carry balances from former settlements into succeeding settlements, and it would necessarily follow that a former incorrect balance would presumptively make a settlement incorrect into which it was carried. If you determine that any of these settlements are erroneous for any of these reasons which I have given you, to such an extent that the balance found did not, at the termination of each settlement, show the true condition of the account

between the treasurer and the county by reason of error, concealment, omission, or mistake therein, or that by reason of fraud, concealment, errors, or omissions, the balance reached on the last settlement of March, 1902, did not show the correct amount due the county of Macomb, from the beginning of the defendant Lovejoy's first term up to that time in such a manner that the county did not receive credit for all moneys belonging to it in the hands of the treasurer, then you would be justified in finding that there had been a breach of the condition of the bonds of the treasurer Lovejoy. For one of the conditions of each of these bonds is that the said treasurer Lovejoy will render a just and true account of all moneys which shall come into his hands whenever required by the board of supervisors or by any provision of law. And this bond follows a statute in force in this State; and if you find that there has been a breach of the conditions of these bonds as I have just set forth, then you would be authorized to enter upon a general accounting between the plaintiff and the defendant in such manner and under such instructions as the court shall hereafter give you. But if you find that all of these settlements were correct and unaffected by fraud, concealment, error, or omission, and after each was made, each showed the correct state of the account between defendant Lovejoy and the county of Macomb, or that, on March 4, 1902, the date of the last settlement, no greater sum of money was due the county of Macomb than therein shown, then you are not authorized to enter upon any general accounting relating to any transactions prior to that time, and, under such state of facts and under the present condition of proofs, your verdict must be for the defendant.

"In this connection the court desires to say to you that, in passing upon the character of these settlements, you have a right to consider the defendant Lovejoy's ledger, Exhibit 9. The testimony of the different members of the committees which made these settlements is undisputed that the ledger was always used in making them, and this testimony also tends to show that, outside of a book called the 'sparrow ledger' or 'sparrow book,' it was the only book used by them, although you have a right to infer from the testimony that other books were used; but if you find that this general ledger, Exhibit 9, was wholly relied on or mainly relied on in making these settlements, and if you further find this ledger to be incomplete, erroneous,

or inaccurate, and all the book of account [to] be produced relating to defendant Lovejoy's accounts with the county of Macomb, you would have a right to infer from . this that these settlements were incomplete, inaccurate, and erroneous. This is not an action against the defendants based on a charge that defendant Lovejoy did not keep accurate accounts; but there is a statute in force in this State which provides:

" 'At the annual meeting of the board of supervisors, or at such other time as they shall direct, the county treasurer shall exhibit to them all his books and accounts and all vouchers relating to the same, to be audited and allowed.' 1 Comp. Laws, § 2540.

" This statute makes it the duty of the county treasurer to present all books of account he may have that are necessary for use in making settlements with the board of supervisors, or to the committee appointed to represent the board of supervisors by the board; hence it follows that if the treasurer presented inaccurate, erroneous, and incomplete books of account to these committees, and that this action of the county treasurer or this failure to produce correct, true, and accurate accounts, resulted in incomplete and erroneous settlements, the county treasurer or the surety on his bond cannot then be heard to say that this plaintiff is estopped and barred from opening up these settlements and in going back of them in an action of debt on his bond.   *   *   *

" Another matter to be considered by you in connection with these settlements is whether, in the destruction of the vouchers or canceled orders which the undisputed testimony shows took place after some of these settlements, evidence was destroyed which could not have been replaced in any way on this trial. And also whether defendant Lovejoy's receipts and papers, which the testimony shows were filed with the county clerk, or tends to show were filed with the county clerk after the settlements showing the disbursements of moneys by the defendant Lovejoy, have been lost, in reference to which there is no other evidence. If you find that vouchers have been destroyed or receipts lost in these ways and with the result of a complete destruction of evidence without any fault of defendant Lovejoy, then it devolves upon the plaintiff to prove to you by a clear preponderance of the evidence, fraud, concealment, error, or omission in these settlements before you would be entitled to find that they did not show the cor-

rect state of the account between defendant Lovejoy and the county of Macomb.   *   *   *

"Ordinarily it is the duty of the plaintiff, in cases of this character, to show not only the money received by the defendant treasurer, but also to show his disbursements in order to determine his indebtedness to the county and to determine whether or not there has been a breach of the condition of the bonds. And, as I have heretofore stated, the burden is upon the plaintiff to do so in this case; but if you find by a fair preponderance of the evidence the fact that there has been a breach of the conditions of the bonds, in that all these settlements between defendant Lovejoy and the board of supervisors I have referred to were erroneous for the reason that they failed to show a correct state of the account between the county and its treasurer at the time they were made, so that the defendant Lovejoy was indebted to the county in a larger balance than found in these settlements, and in a larger sum than was found on the last settlement of March 4, 1902, then this state of facts so found shows a noncompliance with the condition of the bonds and a breach thereof, the effect of which under the peculiar circumstances of this case is to cast on the defendant Lovejoy the duty of showing his disbursements, if he has made any, in addition to such as are admitted or proved. And in connection with this statement you must also take into consideration the instruction I have given you upon the necessity of the plaintiff proving that these settlements are erroneous by a clear preponderance of evidence, in case you find that there has been a destruction of evidence."

We think the charge as favorable to defendant as he was entitled to have given. Plaintiff, whether it owed the duty to do so or not, assumed, in fact and effect, the burden of proving the receipts and disbursements of the office. A more accurate statement is that the case made by plaintiff did show all that was shown concerning receipts and disbursements. The jury found no greater sum due than the evidence, including the ledger account, warranted. It is contended that the testimony shows that the plaintiff has in its possession, or in its control, evidence which it has not produced; that there is such evidence in the custody of the clerk of the county. If this

were so, we should be obliged to consider whether, under the circumstances of this case, plaintiff was bound to prove the disbursements. But we do not so read the record, and the jury, to whom the question was submitted, did not so find. Such evidence of disbursements, not shown by the ledger, as appears to have ever existed, was either destroyed or filed or deposited with the county clerk. The testimony tended to show, and warranted the jury in finding, that nothing was destroyed which the ledger did not bear evidence of, and the clerk of the county, called as a witness, testified that he had produced such papers as he found in his office and had produced all that he knew about except some stubs showing sparrow orders issued, about which no point is made. A large number of papers, identified by plaintiff's witnesses, were, on cross-examination, read into the record. Counsel for defendant disclaimed the purpose of introducing them to show disbursements. They did, in fact, show disbursements. It is claimed by counsel for plaintiff that the disbursements so shown have been included in the totals used by them to show the balance owing by the treasurer. This claim is not disputed. We are therefore of opinion (and we need go no further) that the court committed no error in instructing the jury as is set out in the paragraph of the charge last quoted; the jury having been, also, further instructed concerning the burden resting upon the plaintiff in case vouchers had been destroyed or receipts lost. Because, if the jury found, or if we assume, that the various settlements with the county were erroneous or fraudulent, and that plaintiff, having proved certain receipts of money, had proceeded in giving evidence of disbursements to the point of showing and admitting all that the ledger was evidence of and all that the other vouchers and papers in the office of the clerk were evidence of, and no evidence of any disbursements was, by act or omission of the plaintiff, lost or destroyed, it was the defendant who was bound either to meet or to submit to the presumption that other evidence

of disbursements, if any existed, was within his knowledge and control. A case had been made for the application of the rule stated in *People* v. *Swineford,* 77 Mich. 583. And the rule stated meets and determines, against appellant's contention, the point that the manner of keeping the ledger does not permit it to be said, with certainty, that certain small items of receipts shown were not, in fact, disbursed. It is true that the theory of counsel for plaintiff is (and it may be said to have been the view of the trial court) that the duty of the treasurer required him to keep accurate books of account, and that evidence that the books or book was inaccurately and fraudulently kept, added to evidence of actual receipts of money not appearing therein, made a case for plaintiff which defendant was bound to meet by proof that he had, in fact, accounted for all moneys received by him. We, for reasons already stated, are not called upon to discuss this theory. What was actually done at the trial is before us. Taking into consideration the entire charge and the state of the evidence, it fairly and correctly advised the jury of their duties. An examination of defendant's requests to charge and comparison with the charge as given does not satisfy us that the court omitted anything to the prejudice of defendant.

We have, in what has been said, disposed of the objections presented here on the part of appellant without specific reference to the assignments of error which are relied upon. All of such assignments have been examined, and are overruled.

We find no reversible error, and the judgment is therefore affirmed.

McAlvay, Grant, Blair, and Montgomery, JJ., concurred.