**KAL–CEN CORPORATION, a Delaware corporation, Plaintiff,**

v.

**BEZTAK PROPERTIES, INC., a Michigan corporation, Defendant.**

**No. 87–CV–2158–DT.**

United States District Court, E.D. Michigan, S.D.

Sept. 27, 1988.

904

Robert G. Russell, Kerr, Russell and Weber, Detroit, Mich., for plaintiff.

Frederick B. Bellamy, Bellamy and Gilchrist, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

The parties to this bench trial each claim entitlement to a One Hundred Thousand Dollar ($100,000.00) good faith deposit pledged pursuant to a contract to purchase a mortgage.

Plaintiff, Kal–Cen Corporation, holds a purchase money mortgage on the Kalamazoo Hilton Center, a hotel and retail establishment located in Kalamazoo, Michigan. The mortgagee and payor, Kalamazoo Center Partners, L.P., desired to refinance the note and, on January 1, 1985, executed a Note and Mortgage Modification Agreement with Kal–Cen, whereby Kal–Cen agreed to defer collection of the mortgage interest in exchange for the right to collect interest on the deferred interest.

On August 5, 1986, Kal–Cen entered into a Mortgage Purchase Agreement with the defendant, Beztak Properties, Inc., whereby Beztak agreed to purchase Kal–Cen's mortgage interest in the Kalamazoo Hilton Center for Six Million Five Hundred Thousand Dollars ($6,500,000.00).

The principal negotiators of the purchase were William Heitner of Kal–Cen and Howard Leshman for Beztak. Prior to signing the agreement, Leshman represented that Beztak intended to finance the purchase through outside sources, but assured Heitner that Beztak would purchase the mortgage with its own capital if it could not obtain outside financing.

Paragraph 4 of the Mortgage Purchase Agreement required Beztak to evidence its good faith in pursuing the purchase by delivering into escrow an unconditional, irrevocable letter of credit in the amount of One Hundred Thousand Dollars ($100,-000.00). Paragraph 4 of the agreement also contains the conditions for release of the Good Faith Deposit:

The Good Faith Deposit shall be returned to Purchaser upon closing of the purchase and sale on the Closing Date, or paid to Seller as liquidated damages in

the event the purchase and sale is not consummated as set forth herein and Seller shall have no other rights or remedies against Purchaser whatsoever; provided, however, Purchaser may terminate this Purchase Agreement if (i) Seller's representations or warranties herein are incorrect, (ii) Seller fails to perform any of its other obligations under the Purchase Agreement or, (iii) pursuant to the right to terminate under Paragraph 8 hereafter, in which event the Good Faith Deposit shall be immediately returned to the Purchaser upon written termination of this Purchase Agreement by Purchaser.

The referenced paragraph 8 provides in part:

> Upon receipt of the mortgage title insurance commitment (the "Commitment") and survey described in Paragraphs 2(b) and (c) hereof, Purchaser shall have a period of forty-five days from the date of receipt of the Commitment and survey to notify Seller of any objections in writing. If Purchaser or its attorney shall object in writing to any matters disclosed by the title insurance commitment or survey, Seller shall have thirty (30) days from the date of the objection to either cure such defects and to furnish a revised commitment or survey showing such defects cured or removed, or to obtain insurance over said defects.

Thus, the Mortgage Purchase Agreement provides that Kal–Cen's only remedy for Beztak's breach of the agreement is the good faith deposit. Under the agreement, Beztak will be in breach of the agreement if the parties fail to close, unless the failure to close results from Kal–Cen's incorrect representations or warranties, Kal–Cen's non-compliance with its contractual duties, or Kal–Cen's failure to cure title objections within thirty days after Beztak's timely notice of title objections. Beztak's objections are timely if they are made within forty-five days after receipt of a title insurance commitment.

On September 19, 1986, Lawrence Kilgore, attorney for Beztak, delivered the letter of credit, dated to expire on November 18, 1986, to Lawyers Title Insurance Corporation. On October 7, 1986, Kilgore received a title insurance commitment that complied with paragraph 8 of the Mortgage Purchase Agreement. This triggered the forty-five day period for filing title objections, which would expire on November 24, 1986.

Beztak began soliciting outside financing to purchase the mortgage. Between August 5, 1986 and November 14, 1986, Beztak utilized the services of four mortgage brokers who contacted twenty-four financial institutions. On November 14, 1986, E.F. Hutton provided Beztak with the only favorable response to Beztak's applications. That response, however, indicated that a definite response would require two weeks.

On November 18, 1986, Howard Leshman telephoned William Heitner. The parties disagree as to the substance of this conversation. They do agree that Leshman informed Heitner of E.F. Hutton's inability to provide a definitive response to Beztak's loan application for two weeks and that as a result Beztak needed to extend the date the parties were to close the transaction. They also agree that Leshman informed Heitner that Beztak's attorney, Lawrence Kilgore, would be sending Kal–Cen's attorney, Cynthia Dillon, a letter requesting information on some of the mortgage provisions. The parties disagree as to the remainder of the discussion.

Leshman testified that he requested that the time period in which to make title objections be extended beyond November 24, 1986. Leshman also testified that in consideration of these extensions he would renew the letter of credit that was to expire on November 18, 1986. Heitner stated that an extension of the title review period was not discussed at this time and that in consideration of the extension of the closing period Kal–Cen would require an additional One Hundred Thousand Dollar ($100,000.00) nonrefundable deposit.

After the phone call, Leshman extended the expiration date on the letter of credit and telephoned Larry Kilgore to notify him that the closing date had been extended to

the end of the year and the title review period had been extended to a date left uncertain. Leshman told Kilgore to write Cynthia Dillon to inform her of their progress on the title review. Kilgore telephoned Dillon and raised several questions concerning the mortgage.

Leshman then drafted and mailed a letter to Heitner dated November 18, 1986, which reads:

Dear Bill:

Pursuant to our telephone conversation, enclosed please find the basic terms of a participating mortgage from E F Hutton Properties for the Kalamazoo Center.

Larry Kilgore of the Evans & Luptak Law Firm is submitting a letter today to Ms. Dillon of your office requesting answers to several questions regarding the current mortgage.

As a result of this required information, we are hereby requesting an extension of the closing date for this transaction until December 31, 1986.

Please respond at your earliest opportunity.

Yours very truly,

/s/ Howard J. Leshman

Although Leshman's letter specifically requests an extension of the closing date, it makes no reference to a request for an extension of the title review period.

Larry Kilgore wrote a follow-up letter to his conversation with Cynthia Dillon. That letter begins:

I have reviewed the title insurance commitment and recorded documents supplied to us by Lawyers Title Insurance Corporation. The record shows that there are several agreements that have not been recorded. . . .

Kilgore then lists five various interests in the property, including leases, easements, mortgages, and purchase agreements. The letter continues:

As I mentioned to you during our telephone conversation on November 18, 1986, I am researching the question of whether Michigan's interest on interest statute (M.C.L.A. 438.101) applies to the interest deferrals contained in the Note and Mortgage Modification Agreement. If you have any materials in your file which would shed any light on this question, I would be interested in seeing them.

At no point in his letter does Kilgore expressly state that it purports to be a list of title objections.

The November 24th closing date for title objections fell on a Monday. Larry Kilgore had expected Kal–Cen to notify him of a new expiration date for filing title objections by the preceding Friday, November 21, 1986. When Kal–Cen did not respond, Kilgore spoke with Leshman and Mike Mehr, a partner in Kilgore's law firm. They discussed Leshman's conversation with Heitner. Kilgore and Mehr decided that a telegram was in order. Accordingly, Kilgore sent Heitner a one sentence telegram, which stated:

This is to confirm that agreement reached between yourself and Howard Leshman that the review period and the closing date for the Kalamazoo Hilton deal have been extended to 12/31/86.

Leshman testified that he first learned of the telegram on Monday, November 24, 1986.

Heitner was out of his office when the telegram arrived. Dillon discovered the letter on Monday, November 24, when she went to Heitner's office to see if anything had come in on the transaction. When Heitner arrived at the office, Dillon gave the telegram to him. Heitner testified that after reading the letter he was angered because he had been misquoted. According to Heitner, Kal–Cen had not extended the review period and did not agree to extend the closing date without naming any funds.

Heitner contacted Leshman and asked him why Kilgore sent the telegram. According to Heitner, Leshman responded that the law firm required the review period as part of the negotiations.

Dillon contacted Kilgore by letter dated November 25, 1986. In the letter she asserted that the telegram does not reflect the agreement between Heitner and Lesh-

man. Dillon claimed that Heitner agreed to extend the closing date to a date prior to December 31, 1986, provided Beztak delivers a One Hundred Thousand Dollar ($100,-000.00) nonrefundable deposit to be applied to the purchase price. She further claimed that there was no discussion between Heitner and Leshman regarding the review period and that, because Kal–Cen had not received any title objections within the applicable 45 day review period, "the title is considered acceptable and Kal–Cen is ready to close the transaction in accordance with the Agreement." Dillon also enclosed in the letter copies of the unrecorded agreements raised by Leshman and a memorandum from outside counsel that takes the position that the interest on interest provision of the Note and Mortgage Modification Agreement was valid under Michigan's usury statute.

When Kilgore received Dillon's letter, he forwarded a copy to Leshman and asked him to call Heitner to resolve the misunderstanding about their agreement to extend the closing and title review dates. Leshman called Heitner and read the letter to him. According to Leshman, Heitner chuckled and admitted that Dillon's letter listed a lot of facts and circumstances to which the parties did not agree. According to Heitner, the only misrepresentation in Dillon's letter was that Leshman had agreed to the additional money deposit as consideration for extending the closing date.

Heitner and Leshman recognized that neither side was satisfied with the current negotiations. Heitner was interested in obtaining an additional nonrefundable cash deposit and Leshman wanted to extend the review period because Beztak's attorneys were having problems with the interest on interest provisions of the Note and Mortgage Modification Agreement. They agreed to leave the negotiations of the various closing dates to the two legal departments.

On November 26, 1986, Dillon mailed Kilgore a letter proposing an amendment to the Mortgage Purchase Agreement. The amendment included an extension of the closing date to December 23, 1986 and a request for a One Hundred Thousand Dollar ($100,000.00) cash nonrefundable deposit and concludes:

> Purchaser hereby acknowledges that the review period referred to in Section 8 of the Mortgage Purchase Agreement has concluded and no defects in the Commitment, as that term is defined therein, have been found.

Dillon's letter and proposed amendments to the Mortgage Purchase Agreement prompted two responses from Kilgore. The first response, mailed on December 2, 1986, addressed Leshman and Heitner's agreement to extend the dates of the Mortgage Purchase Agreement. That letter reads in part:

> Mr. Leshman has assured me that the agreement that he reached with Mr. Heitner was that the closing date would be extended to December 30, 1986, and that the "at risk" date for the refundability of the deposit would also be extended. Mr. Heitner told him that the "at risk" date would have to be a firm date, and that he would confer with his staff and get back to Mr. Leshman when Mr. Leshman was to return from his vacation. In reliance on that discussion, Beztak allowed the "at risk" date stated in the Mortgage Purchase Agreement to pass, without calling back the letter of credit. Unless and until a firm "at risk" date is agreed upon by the parties, the funds currently on deposit cannot be considered to be "at risk."

The letter then continues by referring to Kilgore's November 18th letter and states:

> In connection with our title objection related to the interest-on-interest statute, I have reviewed the Memorandum prepared by your outside counsel. However, since we are not entitled to rely on that opinion, I have asked the title insurer to provide usury and negative amortization endorsements. We obviously cannot consider this question to be resolved until the title insurer agrees to issue the endorsements.

Although Chicago Title Insurance issued an endorsement insuring that the Note and

Mortgage Modification Agreement did not affect the validity, priority, and enforceability of the original mortgage, Kilgore could not secure an endorsement that would ensure that the Note and Mortgage Modification Agreement was not usurious.

The second letter sent by Kilgore to Dillon, dated December 4, 1986, advances revisions to Dillon's proposed amendments to the Mortgage Purchase Agreement. Dillon did not accept these revisions.

On December 5, 1986, Dillon forwarded to Kilgore another proposed amendment to the Mortgage Purchase Agreement. This version of the proposed amendment provides:

1. The Mortgage Purchase Agreement is hereby amended to provide that the closing date for the transaction shall be on or before December 30, 1986.

2. In consideration for said extension Purchaser shall deliver $100,000 in cash ("Deposit"), concurrent with this Amendment which shall be applied toward the Purchase Price at closing, except in the event the transaction does not close by December 30, 1986, then said $100,000 shall be paid to Seller as liquidated damages as provided in Section 4 of the Mortgage Purchase Agreement.

3. In any event the Deposit shall be nonrefundable to Purchaser after December 10, 1986.

Dillon testified that Kilgore agreed to this version of the proposed amendment. Kilgore testified that he and Dillon discussed the proposed amendment over the phone and either he or Dillon typed two modifications to the amendment. The first modification added the following sentence to the second paragraph of the amendment:

Upon receipt of the deposit by Seller, Purchaser's $100,000 letter of credit held by Lawyers Title Insurance Corporation shall be released to Purchaser.

The second modification changed the third paragraph by striking the language "In any event" and adding to the end of the sentence the phrase "unless cancelled in writing by Purchaser on or prior to said date."

Regardless of which version the parties accepted, neither version was executed and Beztak never delivered to Kal–Cen the agreed upon One Hundred Thousand Dollar ($100,000.00) cash deposit.

On December 9, 1986, Michael Mehr, a member of Kilgore's law firm, sent a letter to Heitner, which contained the following:

This is to advise that Beztak Properties, Inc. continues to have a title objection as to the compound interest provisions contained in the Note 'and Mortgage Modification Agreement, as well as to other matters affecting title. Until the title insurance company issues us an endorsement to insure against this issue as well as other title requirements, an unresolved title defect continues. Since it is not possible to satisfactorily resolve these matters by December 10, 1986, the date proposed by you, there is no choice but to have the $100,000 good faith deposit returned to Beztak immediately. We trust that we can continue to work with you and the title insurance company to complete the necessary title insurance endorsements and to close this transaction.

On that same day Mehr sent a letter to Lawyers Title Insurance Corporation instructing the escrow agent to return the letter of credit.

Mehr's conduct prompted Heitner to call Leshman. Heitner told Leshman that he could not understand why the interest on interest issue created problems and asked Leshman if Beztak raised the issue as a deal breaker. Leshman told Heitner that if title insurance could be obtained the deal would not break. Heitner testified that during this conversation Leshman indicated that E.F. Hutton would not finance the deal and that Beztak's problem was financing. In response to this Heitner indicated that Kal–Cen would be willing to place a financing contingency into the agreement if Beztak would provide consideration for the contingency. According to Heitner, Leshman indicated a financing contingency would not be necessary because Beztak could fall back on its line of credit.

On December 15, 1986, Cynthia Dillon sent a letter to Lawyers Title Insurance asserting Kal–Cen's entitlement to the letter of credit. Due to the conflicting demands, the escrow agent did not turn over the letter of credit to either party.

In early January of 1987, Heitner contacted Leshman to inquire if a possibility of closing the transaction still existed. Leshman indicated Beztak's continued interest in closing the deal and informed Heitner that Beztak was still trying to obtain financing. Leshman sent Heitner a letter dated February 4, 1987, in which Leshman outlined Beztak's attempts to obtain financing. The letter concluded with a modified offer to purchase the Mortgage Note. Under this offer, Beztak would purchase the mortgage for Six Million Five Hundred Thousand Dollars ($6,500,000.00), which would be paid in one lump sum at the end of three years. During the three year period, Kal–Cen would retain title to the mortgage and note and Beztak would pay interest on the purchase price. Kal–Cen did not accept this offer.

No other communication occurred between Leshman and Heitner.

On March 9, 1987, Robert Leone, secretary of Kal–Cen, sent a letter to Kilgore claiming entitlement to the good faith deposit. The letter also states:

> [S]hould we not receive such check on or before March 25, 1987, we shall understand that Beztak refuses to honor its debt to Kal–Cen and we shall then have no alternative except to take whatever action is necessary to effect collection of all sums due us in this matter.

Beztak did not pay the good faith deposit and this litigation resulted.

■ Kal–Cen is entitled to the One Hundred Thousand Dollar ($100,000.00) good faith deposit. It has established the existence of the Mortgage Purchase Agreement and its entitlement to the liquidated damages thereunder. *Lambert v. Jim Causley Pontiac, Inc.*, 47 Mich.App. 620, 621–22, 209 N.W.2d 619 (1973) (citing *People v. Swineford*, 77 Mich. 573, 43 N.W. 929 (1889)). Both parties agree that Beztak could only retain the good faith deposit if Kal–Cen made incorrect representations or warranties, did not comply with its contractual duties, or failed to cure title objections within thirty days after Beztak's timely notice of title objections. Beztak does not claim that Kal–Cen made incorrect representations or warranties or that Kal–Cen breached its contractual duties; however, Beztak does claim that Kal–Cen failed to cure timely title objections. Although Beztak did object to the defects in the mortgage title, Kal–Cen established that the objections were not timely.

Pursuant to the agreement, Beztak's objections to the title must have been made within forty-five days after receipt of the title commitment. This required Beztak to raise its objections by November 24, 1986.

Beztak argues that Larry Kilgore asserted title objections in his November 18, 1986 letter to Cynthia Dillon. Neither Kilgore nor anyone else at Beztak considered the letter to be a list of title objections. After sending the letter, Beztak did not take the position that Kal–Cen had thirty days to cure title objections; no one at Beztak communicated to Kal–Cen that it was obligated to cure the title defects. Moreover, if Beztak considered the letter a list of title objections, they would not have needed an extension of time within which to review the title.

Beztak contends that the parties modified the agreement and extended the time period in which objections could be filed. The party asserting that a written agreement has been modified bears the burden of proving the modification. *Minkus v. Sarge*, 348 Mich. 415, 421, 83 N.W.2d 310 (1957). Beztak relies on Leshman's testimony, that Heitner agreed to extend the review period but left the date uncertain, to establish that the parties modified the contract. Beztak also claims that it renewed the letter of credit, which expired on November 18, 1986, in consideration for the extension.

Beztak's arguments are not compelling. If Leshman had requested an extension of the review period, it would be reflected in his November 18, 1986 letter to Heitner in which he reiterates their telephone conver-

sation. Moreover, Kilgore's telegram of November 21, 1986 would not have prompted the surprise that is evident in Heitner's phone call to Leshman and Dillon's November 25, 1986 letter to Kilgore. Finally, the Mortgage Purchase Agreement required that Beztak submit a good faith deposit in the form of an unconditional irrevocable letter of credit that was to remain in effect until closing. Therefore, the renewal of the letter of credit cannot be consideration for an extension of the review period. A party cannot demand performance beyond what was originally agreed without doing more than his original promise. *Siewek v. F. Joseph Lamb Co.*, 257 Mich. 670, 675, 241 N.W. 807 (1932).

Beztak also claims that the parties modified the contract through the series of amendments drafted and discussed by Dillon and Kilgore. Dillon and Kilgore both testified that they had agreed on an amendment to the contract; however, they disagree as to which amendment was accepted. This, in itself, is sufficient to find that a modification did not occur. *Wells v. 10–x Mfg.*, 609 F.2d 248, 256 (6th Cir.1979). Moreover, the parties never signed any of the proposed modifications. Nevertheless, even assuming the parties came to a meeting of the minds as to the modification, Beztak was obligated under both modifications to deliver a One Hundred Thousand Dollar ($100,000) cash deposit, concurrent with the amendment, which it did not deliver. When the performance of conditions is concurrent for both parties, neither party can hold the other to his condition without an offer or tender of performance. 17 Am.Jur.2d *Contracts* § 358 (1964). Thus, Beztak failed to establish that the parties modified the contract through the series of amendments drafted by Kilgore and Dillon.

Beztak's final two arguments appeal to the Court's equity jurisdiction.

■ First, Beztak contends that Kal–Cen should be estopped from imposing the November 24, 1986 expiration date because Beztak relied upon Heitner's oral representation that the title review period would be extended. The Michigan Supreme Court recognizes the doctrine of promissory es-

toppel but has not adopted a particular version. *Opdyke Investment Co. v. Norris Grain Co.*, 413 Mich. 354, 369–70, 320 N.W. 2d 836 (1982). The Court has, however, acknowledged the version adopted in the Restatement (Second) of Contracts. *Id.* The Restatement provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third party and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

1 Restatement (Second) of Contracts § 90. Beztak's reliance on this doctrine is misplaced because, as previously stated, Beztak has not established that Heitner promised to extend the review period. The only evidence of Heitner's promise is Leshman's testimony of his November 18, 1986 telephone conversation with Heitner. This testimony lacks credibility because it is disputed by Heitner and is not reflected in the letter Leshman drafted that day, which reiterates the substance of their telephone conversation.

■ Beztak contends that Kal–Cen should be denied relief because it did not respond to Kilgore's November 21, 1986 telegram, which sought to confirm an extension of the title review period, until after the expiration of the review period. Although equity will provide relief when the enforcement of one individual's rights results in a gross injustice to another, *Gilbert v. Haire*, 43 Mich. 283, 286, 5 N.W. 321 (1880), the facts of this case do not present such a gross injustice. Beztak agreed to a forty-five day period in which to object to title defects. Kilgore knew of the interest on interest provision of the Note and Mortgage Modification Agreement at least six days prior to the closing of the review period. Had the interest on interest provision been a real concern of Beztak, Kilgore should have sent a telegram objecting to title rather than confirming that the closing and review periods had been extended.

Finally, the facts indicate that Beztak attempted to delay closing not to more adequately review the mortgage title, but

rather, to obtain the financing necessary to purchase the mortgage. On several occasions, Leshman assured Heitner that Beztak had sufficient funds to finance the purchase without the aid of outside sources. When E.F. Hutton declined to finance the purchase, Beztak did not present its own funds, but rather, considered alternative methods of obtaining outside financing. In early 1987, Beztak offered to purchase the property over three years by paying Kal–Cen interest during the three years and the balance at the end of the third year. This offer expressly waived Beztak's right to review title. Although Kal–Cen would retain title to the mortgage for the three years, Beztak would obtain the title in 1990. The objectionable interest on interest provision remained in effect, pursuant to the Note and Mortgage Modification Agreement, until May of 1991. Thus, Beztak was willing to waive any title defects, for which it would be ultimately responsible, in exchange for outside financing.

Accordingly, the Court finds that Kal–Cen proved the existence of the contract and its right to the One Hundred Thousand Dollar ($100,000.00) good faith deposit pursuant to the contract provisions.

Let judgment enter accordingly.

So ordered.