FOX v. DETROIT TRUST CO.

1. MORTGAGES—TRUST—CONSTRUCTION OF ASSIGNMENT OF NET INCOME—CONDITION OF CONTINUANCE.

Under an assignment of net income of apartment building, executed by mortgagor under trust mortgage in consideration of trustee's forbearance from instituting foreclosure proceed-

ings for a period of one month, which assignment provided that it "continue so long as the bonds and mortgage aforesaid are in default and said (one of the mortgagors) shall continue to manage and conduct * * * and operate the same," continuance of the assignment *held*, dependent on but one condition, that is, default in the bonds and mortgage, as the term "so long as" is not again inserted before clause pertaining to continuance of mortgagor's services as could have been done to clarify instrument, construction of instrument as a whole indicates continuance of his services was perhaps an inducement to execution of the instrument but not essential to a continuance thereof nor expressed as a part of the consideration therefor and construction that agreement could be terminated immediately after execution by mortgagor's declining to serve as manager would be an unreasonable one.

2. SAME—CONSTRUCTION OF ASSIGNMENT OF NET INCOME.

In construing a contract assigning net income of apartment building by mortgagors, in default under trust mortgage, to trustee in consideration of forbearing to foreclose for a month, a questioned clause must be read as a whole and together with remaining provisions of the assignment and not by disassociating one part from the remainder.

3. CONTRACTS—CONSTRUCTION—AMBIGUITY.

It is not the province of the court by construction or by the addition of words or punctuation to remake the contract of the parties or to find a meaning not intended but where an ambiguity exists, it is the duty of the court to determine, if possible, the true intent of the parties by construction of the instrument.

4. MORTGAGES—TRUSTS—ASSIGNMENT OF NET INCOME—PURCHASER OF MORTGAGOR'S INTEREST AT BANKRUPTCY SALE.

Action of purchaser of mortgagor's interest in property at sale of remaining assets by mortgagor's trustee in bankruptcy, even if it gave purchaser title to an interest in apartment property in question, in discharging mortgagor as manager of apartment, which he had continued to operate after default under trust mortgage under an agreement to assign net income to trustee in consideration of its forbearing to foreclose for a month, *held*, not to disturb assignment or give such purchaser any claim on the income from the property.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—POSSESSION OF MORTGAGED PREMISES—INCOME.

> Question as to right to possession of property between date of purchase of mortgagor's interest at bankruptcy sale and expiration of period of redemption from foreclosure of trust mortgage *held*, academic and not for discussion where purchaser at bankruptcy sale has been found not entitled to income because of previous recorded assignment of net income by mortgagors then in default.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 10, 1938. (Docket No. 87, Calendar No. 40,137.) Decided October 3, 1938.

Bill by William Fox against Detroit Trust Company, a Michigan corporation, Charles H. Stevenson and others to quiet title to real property, for an injunction and other relief. Cross-bill by defendant Detroit Trust Company against plaintiff for an injunction, accounting and other relief. From decree for defendant, plaintiff appeals. Affirmed.

*Shapero & Shapero,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendants.

CHANDLER, J. On October 2, 1925, defendants Charles H. Stevenson and his wife executed a mortgage on the College Manor apartments, the property involved in this litigation, to the Detroit Trust Company as trustee, securing a bond issue in the aggregate principal amount of $130,000.

Default occurred in the terms and conditions of the mortgage, and on December 3, 1929, the parties entered into an agreement, the portion thereof material to the issues here involved reading as follows:

"Now, therefore, in consideration of Detroit & Security Trust Company, trustee, forbearing from instituting foreclosure proceedings on the mortgage aforesaid for the period of one month from date

hereof, the said Charles H. Stevenson agrees that he will and he does hereby assign to Detroit & Security Trust Company, trustee under the said mortgage, the net proceeds of the operation of the College Manor apartments, at the northwest corner of Third and Prentis avenues, in the city of Detroit, Michigan, as further security to the Detroit & Security Trust Company, trustee under the said mortgage.
\* \* \*

"It is further agreed that this assignment of and payment of the net proceeds of operation shall continue so long as the bonds and mortgage aforesaid are in default and said Charles H. Stevenson shall continue to manage and conduct the said College Manor apartments and operate the same, but he shall permit the Detroit & Security Trust Company, trustee, to examine the books and records of the College Manor apartments at any time, and that the said Detroit & Security Trust Company, trustee, be permitted to have an outside audit made at any time that it deems fit."

The agreement was recorded in the office of the register of deeds on December 9, 1929, and it is claimed by the Detroit Trust Company that simultaneously with the execution thereof, Stevenson surrendered possession of the property to it. Plaintiff disputes this position and maintains that possession was retained by Stevenson.

On April 18, 1931, in settlement of a marital dispute, Stevenson deeded the property to his wife. This deed was never recorded due to the fact that it bore the name of but one witness.

Proceedings to foreclose the mortgage were instituted May 20, 1931, a decree of foreclosure entered on October 26, 1931, but no sale was held thereunder until February 8, 1937, because the trustee lacked

sufficient means with which to purchase the property thereat.

On March 12, 1932, Stevenson was adjudicated a bankrupt and the Union Guardian Trust Company was appointed trustee in bankruptcy. The property above mentioned was never scheduled, inventoried, appraised or advertised for sale in the bankruptcy proceedings and the trustee disclaimed any interest therein, the final report of the trustee filed October 6, 1936, stating that the Detroit Trust Company was in possession thereof.

Plaintiff was present on December 9, 1936, at which time the remaining assets of the bankrupt were purchased by one Davis, who appears to have been a confidant of plaintiff Fox, and who competed with the latter in the bidding. Prior to the bidding, Fox was orally advised of the unrecorded deed to Mrs. Stevenson and that the Detroit Trust Company had been in possession of the premises upwards of seven years. After the sale, although Davis was the highest bidder, a quitclaim deed of the premises "without recourse" was executed by the trustee in bankruptcy to plaintiff, together with an assignment of the trustee's interest, if any, in the rents and profits from the College Manor apartments.

On the evening of December 29, 1936, without consultation with the trustee under the mortgage, and after the latter's offices had closed for the day, and in the absence of Mr. Stevenson, plaintiff entered the premises and announced that he was taking possession thereof, arranged with the caretaker and assistants to work for him until January 15, 1937, and notified the tenants that they were to pay rent to him. Being opposed by the Detroit Trust Company, trustee, plaintiff filed the bill of complaint herein to restrain interference with his possession and for an

accounting of rents and profits. A temporary restraining order was issued on January 7, 1937, but was dissolved the following day. The Detroit Trust Company was then appointed receiver *pendente lite* and Fox restrained from interference with the possession. Subsequent to the foreclosure, it was ordered that the receiver turn the property over to the Detroit Trust Company as owner.

The trial court dismissed plaintiff's bill of complaint and ordered him to pay to defendant trust company the rents collected by him, less expenses of operation, prior to the issuance of the injunction restraining him from further interference. This appeal followed.

The trial court found as a matter of fact that the trustee under the mortgage was in possession of the premises at the time plaintiff entered, and as a matter of law that the continued employment of Mr. Stevenson as manager was not a condition to the continuance in effect of the assignment of net proceeds.

In reviewing the case *de novo,* we find it unnecessary to enter into a discussion as to whether or not the mortgage trustee took possession of the property at the time the assignment in question was executed and held the same until the entry by Fox. Neither is it necessary for us to decide the effect of the unrecorded deed to Mrs. Stevenson or the disclaimer by the trustee in bankruptcy of any interest in the property, knowledge of which was orally transmitted to the plaintiff prior to his purchase. And likewise, we do not pass upon the nature of the interest, if any, acquired by plaintiff by his purchase.

We base our disposition of the cause upon a construction of the provisions of the assignment, the

validity of which is not questioned, but which, according to plaintiff, was terminated when Stevenson was no longer conducting or managing the property. Assuming, therefore, that plaintiff, subsequent to his purchase, had the right to enter the premises and oust Stevenson as manager, the question is presented as to whether this action operated to terminate the right of the trust company to the net proceeds under the assignment.

It is to be noted that the assignment states that the same is to continue, "so long as the bonds and mortgage aforesaid are in default and said Charles H. Stevenson shall continue to manage and conduct the said College Manor apartments and operate the same, but he shall permit the Detroit & Security Trust Company, trustee, to examine the books and records of the College Manor apartments at any time, and that the said Detroit & Security Trust Company, trustee, be permitted to have an outside audit made at any time that it deems fit."

According to plaintiff's interpretation of this paragraph, two conditions must exist in order that the assignment remain in effect and the failure of either operated as a termination thereof. He claims that the bonds and mortgage must continue to be in default, and, also, that Stevenson must continue to manage and conduct the apartments. His further claim is that when he discharged Stevenson as manager, one of the conditions had failed and the assignment automatically terminated. The trust company contends the continuance of the assignment was dependent upon the existence of but one condition, that is, default in the bonds and mortgage. We believe the latter construction to be correct.

If the parties had intended that the management by the mortgagor was to be a condition in addition

to default, their intention would have been more clearly expressed by the insertion of the phrase "so long as" between the words "and" and "said," so as to cause the sentence to read "so long as the bonds and mortgage are in default and *so long as* said Charles H. Stevenson shall continue to manage and conduct," et cetera. This failure to supply the words which would have obviously clarified the meaning is some indication that management by Stevenson was not considered by the parties as a condition.

Furthermore, the paragraph of the assignment in question, consisting of a single sentence, must be read as a whole and together with the remaining provisions of the assignment, and not by disassociating one part thereof from the remainder. If this is done it seems clear to us that default alone was the only condition intended as necessary to the continuance of the assignment, and that the reference to Stevenson as manager was perhaps an inducement to the execution of the agreement but not essential to the continuance thereof. This can be best illustrated by reading the sentence as though a semicolon or comma were inserted after the word "default." If this is done that portion of the sentence providing for Stevenson to act as manager reasonably and logically becomes associated with the balance of the sentence defining his duties as such, leaving default as the only condition essential to the continuance of the assignment.

In addition thereto, the only consideration expressly stated by the parties in support of the agreement of the trust company to forbear foreclosure for one month was the assignment of the net proceeds. Employment of Stevenson as manager is not stated as a part of the consideration and was appar-

ently not considered as being important thereto.

Also, it would be unreasonable to suppose that the parties intended to enter into an agreement that could be terminated by Stevenson immediately after the execution thereof by merely declining to act as manager. This, however, would be the result if plaintiff's construction was adopted.

We are well aware of the settled rules of law, so well established that citation of authority therefor is unnecessary, that it is not the province of the court by construction or by the addition of words or punctuation to remake the contract of the parties or to find a meaning not intended. Where ambiguity exists, however, it is the duty of the court to determine, if possible, the true intent of the parties by construction of the instrument.

The surrounding circumstances also lend support to our determination of the question and may properly be considered. When the agreement was executed the mortgage and bonds were in default. The mortgagor had been attempting to refinance and had been informed by the mortgagee that unless the defaults were cured it would be necessary to make application for the appointment of a receiver for the property. In consequence thereof, Stevenson agreed that the trust company should have the net proceeds in consideration of receiving additional time in which to cure the defaults. The mortgagee desired and believed it would be an asset to have Mr. Stevenson continue to manage the property because of his experience and ability in this line. It is apparent that management of the property by Stevenson was desired by both parties, and the provision in regard thereto inserted in the assignment was merely the written expression of this desire.

It follows, therefore, that assuming plaintiff had the right to enter and discharge Stevenson as manager, his act in so doing did not disturb the assignment and give him any claim on the income from the property.

Plaintiff claims the right to possession of the premises between the date of his purchase from the trustee in bankruptcy and the expiration of the redemption period on August 8, 1937. He purchased whatever interest he acquired, including all remaining assets of the bankrupt estate, for $1,300 with the obvious purpose in mind of securing the income. We have decided he was not entitled thereto. The redemption period having long since expired, the question as to who was entitled to the possession between the date of purchase and the expiration of the period has become academic and no reason exists for discussion thereof.

Decree affirmed, with costs to defendants.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., took no part in this decision.