**ASSOCIATED INDEMNITY CORPORATION, Plaintiff–Appellant, Cross–Appellee,**

**v.**

**The DOW CHEMICAL COMPANY, Defendant–Appellee, Cross–Appellant.**

**Nos. 90–1338, 90–1380.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1991.

Decided June 11, 1991.

Glenn F. Doyle, Smith & Brooker, Bay City, Mich., Irving C. Faber (argued), Gary M. Elden, Andrew Butz, Grippo & Elden, Chicago, Ill., for plaintiff-appellant cross-appellee.

Joseph L. Falik, Detroit, Mich., Michael P. Foradas, David M. Elston, Samuel A. Haubold (argued), Kirkland & Ellis, Chicago, Ill., Samuel P. Jordan, Jr., The Dow Chemical Co., Legal Dept., Midland, Mich., William J. Gillett, Dykhouse, Wise & Marsac, P.C., Detroit, Mich., John S. Ingold, The Dow Chemical Co., Midland, Mich., for defendant-appellee cross-appellant.

Before JONES and NELSON, Circuit Judges, and MILES, Senior District Judge *.

MILES, Senior District Judge.

An unusual insurance contract provided that Associated Indemnity Corporation ("Fireman's Fund") [1] would reinstate insurance coverage for the Dow Chemical Company ("Dow") when Fireman's Fund's indemnity payments reached the original limit of coverage under the contract. The contract further provided that the premium for such reinstatement would be determined at the time of reinstatement. The trial judge determined the amount of that reinstatement premium, and both Fireman's Fund and Dow appeal, Fireman's Fund arguing that the premium should be higher, and Dow arguing that the premium should be lower. Furthermore, the trial judge failed to award pre-suit interest, and Fireman's Fund argues that his failure was error. We AFFIRM.

I.

Fireman's Fund issued an insurance policy to Dow that obligated Fireman's Fund to indemnify Dow for losses attributable to the period from July 30, 1970 to January 1, 1974. This 1970 policy limited Fireman's Fund's liability for general liability losses to $2.5 million per occurrence, and it limited Fireman's Fund's aggregate liability for such losses to $2.5 million per category of loss, per year. The policy enumerated five categories of general liability losses, consisting of one category of losses from personal injuries, and four categories of losses from various kinds of property damage. General liability losses did not include losses related to automobiles.

The premium for general liability losses for 1973, the year in dispute, was $893,145, and the premium for automobile-related losses for that year was $170,123. The sum of those two premiums is $1,063,268, and the parties have referred to that sum as the fixed cost premium.

The 1970 policy obligated Fireman's Fund to continue to indemnify Dow for losses in a category even after Fireman's Fund had paid its aggregate liability for that category, but the policy also provided that Fireman's Fund was entitled to an extra premium for doing so. Endorsement No. 25, the crux of this lawsuit, reads:

It is agreed that:

In the event that the aggregate limit of liability is exhausted during any annual period the full limits of liability shall be immediately reinstated. The premium shall be determined at the time of reinstatement.

Circumstances eventually forced the parties to come to grips with that endorsement. In 1981, Fireman's Fund indemnified Dow for a loss attributable to 1973. Its payment to Dow, when added to previous payments, exceeded the aggregate limit of liability for a category of loss. Therefore, Fireman's Fund was obligated to continue indemnifying Dow for such losses, but Dow was obligated to pay Fireman's Fund a reinstatement premium.

However, high stakes prevented the parties from agreeing on the amount of that premium. At the time of reinstatement, Dow faced additional losses in the reinstated category that were fairly certain and that were potentially attributable to 1973. The potential losses were so large that Fireman's Fund's payment of them would certainly exhaust the reinstated aggregate. Therefore, Fireman's Fund demanded a premium of $3.575 million for reinstatement. Fireman's Fund sought compensation for the indemnity payments that it would make under the new aggregate, $2.5 million, for the costs it would incur defending Dow as required by the policy, and for costs of administrating the policy. Fur-

* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

1. The Court will refer to Associated Indemnity Corporation as Fireman's Fund because it is an indirect, wholly-owned subsidiary of the Fund American Companies, Inc., formerly known as Fireman's Fund Corporation, and because another affiliate of Fireman's Fund issued a subsequent insurance policy to Dow which has some relevance to the policy under dispute.

thermore, it sought a small profit. Dow refused to pay such an amount, and it claimed that the premium should be some portion of the fixed cost premium for 1973. Fireman's Fund brought suit, seeking a declaration that the policy required Dow to pay Fireman's Fund the premium that it demanded. Dow argued that the policy required it to pay only 25% of the fixed cost premium for 1973: $265,817. The trial judge found that the reinstatement endorsement was ambiguous, so he reviewed the extrinsic evidence to determine the following intentions of the parties.

First, Dow was to have "true insurance;" that is, the risk of losses exceeding the aggregate was to pass to Fireman's Fund at the inception of "the policy year," 1973.

Second, since the risk of loss passed at the inception of 1973, the premium could not be based upon the risk of loss at the time of reinstatement, and could not exceed the fixed cost premium for 1973.

Third, the parties were to negotiate the amount of the premium rather than resort to a previously determined formula.

Finally, the premium was to be commercially reasonable.

The trial judge then declared a commercially reasonable reinstatement premium to be 50% of the general liability premium for 1973 and ordered Dow to pay Fireman's Fund that amount: $446,572.50, and prejudgment and post-judgment interest.

II.

Fireman's Fund argues that both the plain meaning of the endorsement and the relevant extrinsic evidence require Dow to pay a premium that is commercially reasonable in light of the risk at the time of reinstatement, a risk based upon facts like the high probability of additional losses attributable to 1973. It does not argue that the plain meaning of the endorsement and the extrinsic evidence demonstrate that the parties never arrived at an agreement certain enough for enforcement.[2]

A.

The endorsement does not clearly mean that Fireman's Fund would consider the risk at reinstatement to determine the premium. The endorsement clearly indicates only *when* the reinstatement premium is to be determined; it does not clearly indicate how. Fireman's Fund's analogy of the endorsement to U.C.C. § 2–305 (1978) is inappropriate. Section 2–305 provides that when parties to a contract for the sale of goods have not agreed upon a price, "the price is a reasonable price at the time of delivery." The plain meaning of that language is that the price for goods should be determined upon consideration of circumstances at the time of delivery. However, that language presents a standard, a "price," described in terms of time, "reasonable [at] delivery." In contrast, the endorsement presents no standard, so the reference to time is not for the purpose of describing such a standard.

Fireman's Fund also argues that prohibiting it from considering the risk at reinstatement renders part of the endorsement without purpose. If the premium were to be based upon the risk at the inception of the policy, why could the parties not determine that premium at that time? Why did the endorsement require them to wait until reinstatement? The Michigan Supreme Court, in *Associated Truck Lines v. Baer*, 346 Mich. 106, 110, 77 N.W.2d 384 (1956), has rejected an interpretation of a contract that "render[ed] [a] provision meaningless

2. In light of the parties' intent to negotiate the reinstatement premium in the future, as demonstrated by the language of the endorsement and as specifically found by the trial judge, and in light of the parties' extremely diverse but equally reasonable positions about how a reinstatement premium should be determined, the enforceability of the reinstatement endorsement might have been a viable issue. *See J.W. Knapp Co. v. Sinas*, 19 Mich.App. 427, 172 N.W.2d 867 (1969); Restatement (Second) of Contracts § 33 (1979); and Mich.Comp.Laws Ann. § 440.2204 (West 1967). However, the Court refrains from deciding whether the reinstatement endorsement is unenforceable because Fireman's Fund apparently did not press such a claim before the trial judge. *Newmyer v. Philatelic Leasing*, 888 F.2d 385 (6th Cir.1989). Presenting the claim in the Joint Pre-trial Order, without more, is insufficient. *O'Connor v. City and County of Denver*, 894 F.2d 1210 (10th Cir.1990).

and without purpose." However, prohibiting consideration of the risk at reinstatement does not render part of the endorsement without purpose because another reasonably likely purpose can be ascribed to that part. The parties may have intended merely to emphasize that the premium was not due unless reinstatement actually occurred, and to postpone negotiations that might not have become necessary.

B.

Given the ambiguity of the endorsement as presented to the trial judge, he properly turned to extrinsic evidence to determine the intent of the parties. *See Ford Motor Co. v. Northbrook Ins. Co.*, 838 F.2d 829 (6th Cir.1988) (citing *Goodwin v. Coe Pontiac, Inc.*, 392 Mich. 195, 220 N.W.2d 664, *on reh.*, 392 Mich. 195, 224 N.W.2d 53 (1974)); *William C. Roney & Co. v. Federal Ins. Co.*, 674 F.2d 587 (6th Cir.1982) (citing *Fox v. Detroit Trust Co.*, 285 Mich. 669, 281 N.W. 399 (1938)). To prevail at trial, Fireman's Fund had to prove by a preponderance of that extrinsic evidence that the parties intended the reinstatement premium to reflect the risk at reinstatement. The court in *Lambert v. Jim Causley Pontiac, Inc.*, 47 Mich.App. 620, 621–22, 209 N.W.2d 619 (1973) (citing *People v. Swineford*, 77 Mich. 573, 43 N.W. 929 (1889)), noted the "historical precedent that the plaintiff has the burden of proving [to a preponderance of the evidence] the existence of the contract and his entitlement to benefits thereunder." As held by the court in *Mount Ida School for Girls v. Rood*, 253 Mich. 482, 235 N.W. 227 (1931), that burden of proving entitlement to benefits includes the burden of proving the extent of those benefits. The standard of review here, on the other hand, is whether the trial judge committed clear error when he found that Fireman's Fund had not carried that burden. Fed.R.Civ.P. 52. We find no clear error.

No credible witness testified that the parties expressly agreed to the risk that the premium would reflect. However, evidence at least as persuasive as that supporting Fireman's Fund's claim supports the trial judge's contrary finding that the parties intended the premium to reflect only the risk at the start of 1973. First, the trial judge found that the parties intended reinstatement to substitute for excess drop-down insurance. Provided under excess policies, such insurance is for losses exceeding aggregate limitations in primary policies. At the time of negotiations with Fireman's Fund for the 1970 policy, Dow did not have such insurance because Fireman's Fund had never before demanded aggregate limitations. Witnesses for both sides testified that the reinstatement endorsement was a compromise intended to substitute for drop-down insurance. The trial judge apparently inferred from such testimony not only that the parties intended reinstatement to provide the same uninterrupted coverage that drop-down insurance would have provided, but that they intended the price of reinstatement to reflect the same risk that the price of drop-down insurance would have reflected. His inference is not inescapable, but it is reasonable.

Second, the trial judge noted that the parties agreed to a limitation on the amount of the reinstatement premium under an immediately subsequent policy. The parties negotiated a new policy for a period to begin at the conclusion of the old policy in 1974. The 1974 policy included a provision for aggregate reinstatement similar to the 1970 endorsement. In contrast to the endorsement, however, the 1974 provision included a formula for computing the reinstatement premium: 25% of the fixed cost premium. The trial judge reasoned that Fireman's Fund would not have agreed to such a limitation in the 1974 provision had it believed that under the 1970 endorsement it could charge a premium in light of the risk at reinstatement.

Fireman's Fund correctly argues that the trial judge erred when he labeled the 1974 provision a "practical construction" of the 1970 endorsement. In contrast to the actions in *Detroit Greyhound Employees Federal Credit Union v. Aetna Life Insurance Co.*, 381 Mich. 683, 167 N.W.2d 274 (1969), agreeing to the 1974

provision certainly was not an action that the parties impliedly agreed to be a right or responsibility created by the 1970 contract. Furthermore, in contrast to the actions in *Roney & Co.*, agreeing to the 1974 provision was not necessitated by the fact that the 1970 contract did *not* create a certain right or responsibility: the 1974 provision governed different years than the 1970 endorsement.

Although not entitled to the weight of a practical construction, the 1974 provision nevertheless is probative of the parties' intent regarding the 1970 endorsement. The trial judge did not treat the mere language of the 1974 provision as evidence that the parties intended the same meaning for the 1970 endorsement. To do so would have been improper. *Id.* at 590 n. 2. Likewise, the judge properly refused to treat the language as evidence that the parties' intent had changed. The change in language was not, as in *TCP Industries v. Uniroyal, Inc.*, 661 F.2d 542, 548 (6th Cir. 1981), the deletion of an "elaborate formula for pricing," but was a much less probative addition of a simple formula. The judge merely concluded, quite reasonably, that a party who enjoys a benefit under a contract is not likely to give it up in a subsequent contract.

Fireman's Fund explained that it gave up that benefit because the 1974 policy reduced its risk through a more comprehensive deductible plan and through additional reinsurance paid for by Dow. Fireman's Fund explained further that it had not agreed with the reinsurers upon the reinstatement premium under the 1970 endorsement, but had obtained the consent of the reinsurers to the premium under the 1974 provision. However, the trial judge found those explanations to be unpersuasive, and we cannot say that he clearly erred. Fireman's Fund may not have believed its actual risk to be very great under either policy, or the difference in risk may not have justified such a drastic premium change. In addition, its failure to agree with the reinsurers about a premium under the 1970 endorsement may have been simply a mistake, or Fireman's Fund may have considered such an express agreement unnecessary. Furthermore, Dow noted that Fireman's Fund agreed to the 1974 reinstatement premium formula before it negotiated a reduction of its risk. Of course, that "agreement" was not binding when made, but dependent upon agreement to the whole contract. Still, that Fireman's Fund failed to present the reinstatement formula as a bargaining point indicates that it was not greatly concerned about it.

Finally, the trial judge noted that several persons in the Fireman's Fund underwriting department believed that the reinstatement premium would reflect only the risk at the start of 1973. In 1983 and 1984, after it appeared that the 1973 aggregate had been exhausted, underwriters at Fireman's Fund attempted to determine the intent of the parties about the endorsement. Some of their documents refer to the reinstatement premium in terms of a percentage of the original premium and in terms of a rate. Fireman's Fund argues that the authors of those documents did not participate in negotiations for the 1970 endorsement, it questions the accuracy and meaning of those documents, and it directs attention to documents of Dow and its insurance broker suggesting that a reinstatement premium could be so expensive as to make reinstatement not worthwhile. However, the trial judge was entitled to find that the underwriters had sufficient contact with negotiators and sufficient knowledge of policy to offer helpful evidence about Fireman's Fund's intent. Furthermore, although one underwriting document reflected its author's confusion of statements about the 1974 provision as statements about the 1970 endorsement, the trial judge was entitled to glean from other underwriting documents an understanding that the reinstatement premium was to be a percentage of the original premium. Finally, the trial judge was entitled to glean from the documents of Dow and its broker merely an apprehension that Fireman's Fund would adopt a position inconsistent with the parties' intent due to the ambiguity of the endorsement.

C.

In 1977 and 1978 the parties attempted to agree to a price for release of Fireman's

Fund from its contracts with Dow: they attempted to commute the contracts. The price ostensibly would reflect the net value of the policy to Dow, the probable future payments from Fireman's Fund less the probable future premiums to Fireman's Fund. During the commutation negotiations, Fireman's Fund estimated the 1973 reinstatement premium as 50% of the general liability premium for that year. The trial judge found that estimate to be a commercially reasonable reinstatement premium, but he noted that he did not rely upon it as evidence for his primary finding that the premium would reflect only the risk at the start of 1973. He further noted that if commutation negotiations were inadmissible as evidence, then a commercially reasonable premium was 25% of the 1973 fixed cost premium.

Inexplicably, Fireman's Fund argues on appeal that the commutation negotiations were inadmissible. Seizing the apparent opportunity, Dow cross-appeals, arguing that if this Court agrees with Fireman's Fund, then it must hold that the amount of the reinstatement premium was only 25% of the 1973 fixed cost premium. However, this Court declines to decide whether the commutation negotiations were inadmissible because the negotiations were not necessary support for the judge's primary finding, and Fireman's Fund obviously does not challenge the judge's further finding of a commercially reasonable premium. Furthermore, Dow did not argue to the trial judge that the commutation negotiations were inadmissible, so it did not preserve the issue for appeal.

III.

The trial judge awarded interest only from the filing of the suit until final judgment under Mich.Comp.Laws Ann. § 600.6013(5) (West Supp.1990), and interest from final judgment until payment under 28 U.S.C.A. § 1961 (West Supp.1990). He did not award pre-suit interest. Fireman's Fund was not entitled to pre-suit interest upon the reinstatement premium because the amount of that premium was not fixed or easily ascertainable before Fireman's Fund filed its complaint. In *Cree Coach Co. v. Wolverine Insurance Co.*, 366 Mich. 449, 463, 115 N.W.2d 400 (1962), the court awarded pre-suit interest only after holding that "[t]he amount of damages sustained was known or could have been easily ascertained by appellants ... when liability was denied." Furthermore, the court in *Whitney v. Allstate Insurance Co.*, 66 Mich.App. 74, 78, 238 N.W.2d 410 (1975) stated that "[i]nterest can accumulate only when liability, not the amount owed, is contested." The trial judge found that the parties intended that the premium be a commercially reasonable premium rather than the result of a formula. Therefore, at the point negotiations ceased due to the parties' irreconcilable premises, the amount of the premium still was not fixed, nor was it easily ascertainable.

Accordingly, we AFFIRM the judgment of the district court.