76 F.3d 379
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William NAGLER, M.D., Plaintiff-Appellant,
v.
Delmer C. GOWING, III, Defendant-Appellee.
 No. 94-1803.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1996.
 
 Before: BATCHELDER and MOORE, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff appeals from the district court's grant of summary judgment in favor of the defendant. Because the plaintiff's claims are meritless, we affirm.
 
 I.
 
 2
 William Nagler, M.D. ("Nagler") filed this action in state court against his former attorney Delmer C. Gowing, III ("Gowing"). The case was removed to federal court on the basis of diversity jurisdiction.[1] The defendant moved for summary judgment. After oral argument, the district court issued its Order Granting Summary Judgment and Permitting Limited Filing of an Amended Complaint. This Order was clarified by a subsequent order of the district court, which permitted the plaintiff to amend his complaint to assert a new claim of fraud based upon alleged representations of the defendant.
 
 
 3
 The plaintiff's counsel in these lawsuits having been relieved of his license for a period of time, his new attorney filed the amended complaint.[2] Thereafter, the defendant filed his second motion for summary judgment and brief in support, attaching twenty-one exhibits to support his position that the plaintiff had completely failed to state claims against him, that there were no genuine issues of material fact, and that the defendant was therefore entitled to judgment as a matter of law. After argument on the motion, Judge Duggan granted the defendant's motion for summary judgment, stating his reasons for the record. Judgment was entered on June 14, 1994. This timely appeal followed.
 
 II.
 
 4
 Nagler claims that Gowing's actions deprived Nagler of the opportunity to become a secured creditor of Electro-Med, Inc. ("Electro-Med" or "the company") and thereby recoup at least part of his investment in the company from the assets of its estate in bankruptcy. Electro-Med, a Michigan corporation formed in 1986, manufactured and sold a medical device to relieve headaches and soft tissue injuries through electrical stimulation. Gowing, president of the corporation, was also Nagler's attorney in other matters.[3] The company needed cash, and Gowing solicited a loan to the corporation from Nagler. Sometime before July 1, 1987, Nagler wrote two checks, each for $50,000: The first check was payable to Gowing, which he signed over to the company; the other was payable directly to the company. Nagler claims that he made the loans upon Gowing's assurances that the company had accounts receivable of approximately $250,000 due from Blue Cross/Blue Shield of Michigan.[4] On July 1, 1987, Gowing, in his capacity as president of Electro-Med, signed a promissory note in the amount of $100,000 payable to Nagler, with interest at the rate of eighteen percent per annum, payable in payments of $1,350 per week for 104 weeks, and "secured by the accounts receivable and inventory of Electro-Med, Inc."
 
 
 5
 Although Nagler initially received loan repayments from the company, the repayments stopped when the company's financial outlook worsened. Nagler contends that Gowing made assurances to him to induce Nagler not to bring suit against Electro-Med on the promissory note and that Nagler relied upon these assurances to his detriment. Eventually, the corporation filed for bankruptcy. Gowing contends that Nagler's improper marketing of the company's product and creation of nearly two hundred thousand dollars of uncollectible accounts receivable precipitated the bankruptcy. The accounts receivable which supposedly secured the promissory note held by Nagler were subject to the prior secured claims of Pain Suppression Labs, Inc. ("Pain Suppression") ($17,192.76) and Wallant International Trade ("Wallant"). Because the bulk of Electro-Med's accounts receivable were uncollectible, the bankruptcy court ordered the trustee to abandon accounts receivable in the amount of $178,754, pursuant to 11 U.S.C. § 554.
 
 
 6
 In addition to Electro-Med's promissory note to Nagler and the secured claims of Pain Suppression and Wallant, there were numerous other liens and claims against Electro-Med's bankruptcy estate. The trustee's Final Report and Account reveals that the trustee was able to collect a total of only $5,495.16 in assets. Of that total, $277.35 had been disbursed, leaving a balance on hand of $5,217.81. Of that amount, $5,199.10 was distributed to satisfy the expenses of the bankruptcy proceeding, leaving a grand total of $18.71 to be distributed to the creditors of Electro-Med, which was distributed to the priority claimants State of Michigan ($10.11) and Medical Billing Service ($8.60). The other priority claimants, secured creditors and unsecured creditors received nothing. If there had been additional funds available to disburse to the creditors, Nagler would have been in line behind numerous others, including Pain Suppression, Wallant, and various governmental and taxing authorities.
 
 III.
 
 7
 This Court reviews the district court's grant of summary judgment de novo, applying the same standard as that employed initially under Fed.R.Civ.P. 56(c). To warrant summary judgment under Rule 56(c), the moving party must show that " 'the pleadings, depositions, answers to interrogatories, [and] admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir.1991). All inferences to be drawn from the facts contained in the affidavits, exhibits and depositions are viewed in the light most favorable to the non-movant, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); however, a mere scintilla of evidence is insufficient to permit the plaintiff in a civil case to avoid summary judgment against him--the evidence must be sufficient to permit a reasonable jury to find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 8
 A. Summary judgment was properly granted on the breach of contract claim.
 
 
 9
 To avoid summary judgment against him on his breach of contract claim under Michigan law, the plaintiff must allege facts sufficient to demonstrate (1) the existence of a contract between himself and the defendant, which was (2) breached by the defendant, and which breach (3) caused injury to the plaintiff. Only those damages that are the natural, direct and proximate cause of the breach are recoverable. Steward v. Rudner, 84 N.W.2d 816, 823 (Mich.1957). The party asserting breach of contract bears the burden of proving his damages with reasonable certainty. S.C. Gray, Inc. v. Ford Motor Co., 286 N.W.2d 34, 39 (Mich.Ct.App.1979). The essential first step is to prove the existence of a contract between the parties, because one cannot recover damages for breaching a contract that never existed. Williams v. DeMan, 151 N.W.2d 247, 250 (Mich.Ct.App.1967); see also Kamalnath v. Mercy Memorial Hosp. Corp., 487 N.W.2d 499, 503-04 (Mich.Ct.App.1992) (and cases collected therein) (holding that plaintiff could not recover damages because he had failed to demonstrate the existence of an enforceable contract between the parties), cert. denied, 497 N.W.2d 185 (Mich.1993). Michigan precedent places on the plaintiff the burden of proving the existence of the contract and his rights thereunder. Associated Indem. Corp. v. Dow Chem. Co., 935 F.2d 800, 804 (6th Cir.1991); Lambert v. Jim Causley Pontiac, Inc., 209 N.W.2d 619, 619-20 (Mich.Ct.App.1973) (citing People v. Swineford, 43 N.W. 929 (Mich.1889)).
 
 
 10
 Under Michigan law, a valid contract is not formed without the following essential elements: (1) parties competent to contract; (2) a proper subject matter; (3) a legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. Thomas v. Leja, 468 N.W.2d 58, 60 (Mich.Ct.App.1991) (citing Detroit Trust Co. v. Struggles, 286 N.W. 844, 846 (Mich.1939)). "Mere discussions and negotiations cannot be a substitute for the formal requirements of a contract." Id. (citing Kirchhoff v. Morris, 275 N.W. 778 (1937)). "It is a fundamental principle of contract law that a promise to pay is not binding if made without consideration." Id. (citing Matson v. State Farm Mutual Auto. Ins. Co., 238 N.W.2d 380 (Mich.Ct.App.1975)); see also Toussaint v. Blue Cross & Blue Shield of Mich., 292 N.W.2d 880, 885 (Mich.1980) ("The enforceability of a contract depends ... on consideration ...").
 
 
 11
 In this case, despite the district court's having granted the plaintiff leave to file an amended complaint and the court's very generous and helpful indulgence of plaintiff's counsel at the hearing on the defendant's second motion for summary judgment, Nagler was simply unable to allege facts sufficient to establish that a separate, enforceable contract existed between himself and Gowing whereby the two, in exchange for bargained-for legal consideration to Gowing, mutually agreed that Gowing would file the security agreement Electro-Med gave in favor of Nagler. Any ostensible consideration in the form of Nagler's forbearance in not filing a lawsuit in June 1987 would be consideration to the corporation Electro-Med, not to Gowing.
 
 
 12
 Furthermore, even assuming arguendo the existence of an enforceable contract between the parties to this action, Nagler has not established any breach by Gowing. The UCC-1 financing statement from the debtor Electro-Med to the plaintiff Nagler was signed by Gowing as president of Electro-Med. Gowing points out that it would have been impossible for him to have filed the financing statement, because the document was in Nagler's possession and Nagler had never signed it. It appears that, at the time Nagler filed his lawsuit against Electro-Med in February 1988, the financing statement had still not been executed by Nagler; thus, from the outset of Nagler's various litigation, there was no basis for his assertion that he relied upon Gowing to file the document and thereby make Nagler a secured creditor of Electro-Med.
 
 
 13
 Finally, even assuming the existence of a contract between Nagler and Gowing, assuming that such a contract was supported by consideration to Gowing, and further assuming that the contract was breached by Gowing, the district court correctly found that Nagler had suffered no legal damages. The indisputable fact is that even if Nagler had signed the UCC-1 financing statement and returned it to Gowing to file, and even if Gowing had filed it at the earliest possible moment so as to make Nagler a secured creditor of Electro-Med. Gowing's performance of the alleged contract to file the document would have been completely unavailing: Because Nagler would have been the third secured creditor in line behind two prior secured creditors and a number of governmental and taxing authorities, Nagler would have received nothing from the bankruptcy estate in any event. Therefore, he had no legal damages, and this cause of action must fail. Summary judgment was properly granted.
 
 
 14
 B. Summary judgment was properly granted on the fraud/misrepresentation claim.
 
 
 15
 Nagler's claim for fraud/misrepresentation is similarly doomed. To state a claim for fraud or misrepresentation under Michigan law, the plaintiff must prove that: (1) the defendant made a material misrepresentation (2) that was false and (3) which the defendant made knowing it was false or with reckless disregard for its truth, (4) with the intent that it should be acted upon by the plaintiff, (5) who did act in reliance thereon and (6) thereby suffered damage. Schwartz v. Electronic Data Systems, Inc., 913 F.2d 279, 285 (6th Cir.1990); Hi-Way Motor Co. v. International Harvester Co., 247 N.W.2d 813, 816 (1976). A claim of fraud may be predicated upon a broken promise if, at the time the promise was made, the defendant had a then-existing bad-faith intent to break his promise. Thompson v. Paasche, 950 F.2d 306, 312 (6th Cir.1991).
 
 
 16
 Here, the claimed material misrepresentation or broken promise is that Gowing assured Nagler he would file the UCC-1 financing statement so that Nagler would become a secured creditor of Electro-Med, and that Gowing made the assurance intending to deter Nagler from filing suit against the company and with no intention actually to file the financing statement on Nagler's behalf. However, Nagler suffered no legal damages resulting from his alleged reliance on Gowing's purported assurance that the financing statement would be filed. See discussion supra. Nagler's inability to prove this element of his fraud claim causes the whole cause of action to fail. Each element of the claim of fraud must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of the elements is fatal to a recovery. Hi-Way Motor, 247 N.W.2d at 815 (quoting Candler v. Heigho, 175 N.W. 141, 143 (1919)); also see Nernberg v. Pearce, 35 F.3d 247, 249-50 (6th Cir.1994) (same). Therefore, Gowing was entitled to summary judgment on this claim, which was properly dismissed by the district court.
 
 IV.
 
 17
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 This was not the plaintiff's first lawsuit with regard to these facts. Nagler first filed suit against the corporation Electro-Med in 1988. When he received no satisfaction from that action and nothing from the corporation's bankruptcy estate, he filed a malpractice action against Gowing in 1989; however, that action was also unsuccessful. Undeterred, Nagler then filed this lawsuit
 
 
 [2]
 The defendant's counsel requested that the court clarify whether its decision allowing the plaintiff to file an amended complaint had disposed of his claim for breach of contract. Pursuant to his authority under Local Rule 7.1(h) of the United States District Court for the Eastern District of Michigan, Southern Division, Judge Duggan treated this request by letter as a motion for reconsideration, which he denied, explaining that, although all the plaintiff's other claims had been dismissed, the plaintiff's breach of contract claim was not barred by the statute of limitations and should not be dismissed, and that the court had permitted the plaintiff's other remaining claim of fraudulent inducement to be pled in an amended complaint
 
 
 [3]
 Apparently, Gowing had defended Nagler on a ten-count criminal indictment for improper medical insurance charges
 
 
 [4]
 Nagler appears to have been enthusiastic about his investment and about Electro-Med's product, as he undertook various activities, allegedly at his own expense, to promote the product by, e.g., traveling to Illinois and prescribing the device to numerous elderly nursing home residents, evidently on the theory that Medicare would pay for them. Gowing contends that Nagler prescribed and distributed the company's product indiscriminately, without a proper medical assessment of the recipients, and that Nagler's aggressive distribution of the product led to the creation of approximately $180,000 of accounts receivable from the State of Illinois Medicare program, which charges were rejected by the State