## The People v. Alfred P. Swineford.

*State funds — Disbursing agent — Assumpsit — Money had and received—Demand—Estoppel—Negative averments—Burden of proof.*

The defendant was appointed by the Governor of Michigan a member of a commission to represent the State at the New Orleans exposition, and to collect materials to be represented there as an exhibit on the part of the State; and as such member received from the Governor a draft for $5,000 sent by the managers of the exposition to be used in furnishing said exhibit, which draft defendant indorsed over to the treasurer of the commission, and $1,000 of said sum was turned over to defendant for the purpose of securing an exhibit from the Upper Peninsula. This $5,000 being deemed insufficient, an additional $10,000 was raised on bonds issued by the commission, the payment of which bonds was provided for by Act No. 33, Laws of 1885, which authorized the Board of State Auditors to audit and allow to the commission said sum, or so much thereof as should be necessary to pay the expenses of said commission, which were to be paid by the Auditor General upon presentation of the proper voucher, and of the said $10,000 in bonds for cancellation. Under this act the treasurer of the commission was allowed for the expenses of the com-

mission $8,934.67. The State, claiming that the defendant had only paid $250 of the $1,000 received from the commission to secure said Upper Peninsula exhibit, demanded the payment of the balance of the money, and on the refusal of the defendant to comply with said demand brought an action of *assumpsit* against him, and recovered a judgment for said $750 and interest, in affirming which the Court hold:

1. The defendant accepted a place on the commission, and acted with it, and cannot now be heard to say that the funds which came into his hands from the commission were not State funds.

2. It is not material whether the $1,000 received by defendant was a part of the $5,000 received from the exposition managers, or of the proceeds of the bonds issued by the commission. It was a part of a general fund belonging to the State, to be used and expended under the direction of a commission appointed by the Governor, and whose acts were afterwards recognized as valid by an act of the Legislature.

3. While it may be true that the Governor had no power or authority to appoint such a commission, the defendant, having accepted the appointment, and acted under it, is estopped from making any such claim, at least after the Legislature has recognized such action, and authorized the payment of the balance of the expenses incurred by the commission.

4. The $5,000 was a gift to the State, to aid it in preparing its exhibits, which the Governor had authority to accept and apply to the purposes for which it was intended; and the legislative act is evidence that the Legislature approved the action of the Governor in the premises.

5. Even if How. Stat. § 309, providing for a settlement with disbursing officers or agents of the State, can be applied to this case, it sufficiently appears that the defendant refused to recognize the State as interested in this fund, and, on joining issue in the case, denied all indebtedness to the State.

6. It appearing that the only person living at the time of the trial who had any knowledge or information as to whether the defendant expended the balance of the $1,000 was the defendant himself; and the declaration charging him with retaining it, and he failing to adduce the requisite counter-proof, the trial court was not in error in directing a verdict against him under the general rule that where the means of proving a negative are not within the power of the party alleging it, but all the proof on the subject is within the control of the opposite party, who, if it is not true, can at once disprove it, the law presumes the truth of such negative averment,

from the fact that such party withholds, or does not produce, the required proof.

Error to Marquette. (Grant, J.) Submitted on briefs October 24, 1889. Decided November 8, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*A. B. Eldredge* (*E. E. Osborn,* of counsel), for appellant, contended as stated in the opinion.

*S. V. R. Trowbridge,* Attorney General, and *Butterfield & Keeney,* for plaintiff, contended:

1. The defendant is not in a position to question in this case the validity of his own appointment, or the right of the State to recover the moneys held by him and received under it; citing *Mason v. School-dist.,* 34 Mich. 228; *Baldwin v. Potter,* 46 Vt. 407; and it is elementary that an agent, having by virtue of his agency received money, in the absence of the making of any claim against him by any other person, is estopped from questioning the title of his principal; citing *Day v. Southwell,* 3 Wis. 657; *Hancock v. Gomez,* 50 N. Y. 669; *Martin v. Brown,* 55 Id. 186.

2. That the Legislature could have authorized this appointment of commissioners, and given them full power to act as they did in the reception of this money, there is no question; and what they could do in the first instance, they can approve and give effect to by ratification; citing *Weed v. Donovan,* 114 Mass. 183; *State v. Torinus,* 28 Minn. 175; *Watson v. Mercer,* 8 Peters, 88; *Trustees v. McCaughy,* 2 Ohio St. 152; *Lewis v. McElvain,* 16 Ohio, 356; *Thomson v. Lee County,* 3 Wall. 330; *Gibson v. Hibbard,* 13 Mich. 217.

3. Defendant having repudiated the right of the plaintiff to the money, no demand was necessary; citing *Davenport v. Ladd,* 38 Minn. 545; *Bogle v. Gordon,* 39 Kans. 31; *Haas v. Damon,* 9 Iowa, 591; *Moore v. Garner,* 101 N. C. 374.

4. In support of the proposition that, where a defense is peculiarly within the knowledge and power of the defendant, the presumption will be against him if he fails to make the requisite proof, counsel cited *State v. Foster,* 23 N. H. 348; *Riley v. State,* 32 Tex. 763; *Harwich v. Gaunt,* 30 Eng. Law & Eq. 354.

5. Where money is in the hands of one, equitably belonging to another, the latter may recover in *assumpsit* for money had and received; citing *Beardslee v. Horton*, 3 Mich. 562; *Moore v. Mandlebaum*, 8 Id. 434; *Daniels v. Mosher*, 2 Id. 186; *Fiquet v. Allison*, 12 Id. 328; *Catlin v. Birchard*, 13 Id. 110; *Campau v. Shaw*, 15 Id. 236.

LONG, J. The defendant was appointed a United States commissioner at the New Orleans exposition in the years 1884 and 1885. He was also appointed, by the Governor of this State, as one of the commissioners to represent this State at that exposition, and to collect the materials to be represented there as an exhibit on the part of the State.

It appears that the managers of the exposition at New Orleans sent to Governor Begole, then the Governor of the State, their draft for $5,000, for the purpose of being used in getting up and forwarding an exhibit from this State to that exposition. This draft came to Governor Begole; was indorsed by him over to defendant, Swineford, who indorsed it over to Mr. Kanter, the treasurer of the commission appointed by the Governor. This commission consisted of five persons, who were to represent the State at the exposition, and who were charged with the duty of looking after the exhibits from this State, and of raising money for that purpose. One thousand dollars that came from the managers at New Orleans was turned over to the defendant for the purpose of getting up an exhibit from the Upper Peninsula. The money received from the exposition authorities being deemed by the commission entirely inadequate for the making of an exhibit, they applied to the people of the State for aid, and bonds were issued, payable within 30 days after the Legislature of the State should provide money therefor. These bonds were signed by the defendant, as a member of the finance committee

of the commission, and by the other members of that committee, and bear date October 27, 1884. The commission held the letter of Governor Begole, approving the raising the money, and promising to recommend to the Legislature the appropriation of money for the liquidation of the bonds.

The Legislature, at its session in 1885 (Act No. 33, Laws of 1885), passed an act entitled—

"An act to provide for the payment of the expense of the Michigan exhibit at the New Orleans exposition."

This act appropriated $10,000, and authorized the Board of State Auditors to audit and allow to the Michigan commissioners to the New Orleans exposition the sum so appropriated, or so much thereof as might be necessary to pay the expenses of said commission, and the Auditor General was directed to draw his warrant upon the State Treasurer for the amount so audited and allowed, upon the presentation of the proper vouchers, certified by the Board of State Auditors; but provided that, before any such appropriation should be paid, the bonds issued by the commission, which bonds amounted to $10,000, should be presented to the Board of State Auditors for cancellation. This act took immediate effect, and was approved April 1, 1885. On August 26 following, Mr. Kanter, treasurer of the commission, presented to the State Board of Auditors his account for the expenses of the commission, which was allowed at $8,934.67.

There were three exhibits from the Lake Superior district,—the Upper Peninsula. Two of these exhibits were prepared and furnished by the Michigan Land & Iron Company and the Marquette & Mackinaw Railroad Company, without expense to the commission. The other, the mineral exhibit, it is claimed by plaintiff, was prepared by Mr. A. C. Davis, now deceased, who was a mem-

77 MICH.—37.

ber of the commission,—appointed, at the request of the defendant, especially for that purpose. It is claimed further by the State that the defendant only paid, from the $1,000 placed in his hands for the purpose of these Upper Peninsula exhibits, the sum of $250, which was paid to Mr. Davis; and that the defendant still retains $750 of this fund. It is also claimed that a demand was made by the State upon the defendant for this sum, and payment refused, before suit was commenced. This action is brought to recover such balance. The cause was tried before a jury, and the State had judgment. Defendant brings error.

The first claim made by the defendant is that the money sued for, being a part of the $5,000 appropriated by the New Orleans exposition for the furnishing of an exhibit from the State of Michigan, never was the money of the plaintiff, nor did the plaintiff ever acquire any such interest in it as would authorize the plaintiff to demand or recover it.

It appears from the testimony of Gov. Begole·that the moneys were sent to him as Governor of the State, and that he indorsed the draft over to Mr. Swineford, who indorsed it over to Mr. Kanter, treasurer of the commission. The money was treated as a part of the funds which the State would expend in making exhibits at New Orleans. It was not deemed sufficient for that purpose, and the commission borrowed an additional amount, to make up what was required. This amount or deficiency the State paid, under the direction of the act of the Legislature above referred to. The fund coming from New Orleans was treated by the commission, of which the defendant was a member, as State funds, or, at least, as a fund which lessened the amount which the State was to raise; and the act of the Legislature passed thereafter recog-

nized the acts of the commissioners as valid. The defendant accepted a place on that commission, and acted with it; and we think he cannot now be heard to say that the funds which came into his hands from the commission were not State funds. It did not matter whether the $1,000 was a part of the $5,000 coming from the managers at New Orleans, or from the sale of the bonds which the defendant and the other members of the commission issued. It was a part of a general fund belonging to the State, and to be used and expended under the direction of a commission appointed by the Governor, and whose acts were afterwards recognized as valid by an act of the Legislature. It may be true that the Governor had no power or authority to appoint such a commission; but the defendant, having accepted the appointment, and acted under it, is estopped from making any such claim, at least after the Legislature has recognized such action, and authorized the payment of the balance of the expenses incurred by them. This $5,000 was a gift to the State, to aid it in preparing these exhibits, and the Governor had authority to accept it and apply it to the purposes for which it was intended; and the legislative act is evidence that the Legislature approved the action of the Governor in the premises.

Claim is also made that there was no evidence introduced that the treasurer of the commission ever presented to the Board of State Auditors the bonds for cancellation, or that one dollar was ever paid by the State towards the expenses of this exhibit, or of the commission. In this the counsel for the defendant is in error. Some evidence was given of the fact, as shown by the record before us. This, however, is not very material to the issues presented.

It is also claimed by defendant's counsel that, though the defendant was the agent of the State, and this was

State money, the plaintiff is not in a position to claim this money; that, if the defendant is liable at all, it is because, as an officer of the State, he has failed to account for moneys which he has received to disburse as such officer. The claim is—

*First,* that no demand was made, and the defendant never refused to account; and,—

*Second,* that, under the provisions of section 309, How. Stat., it was the duty of the Secretary of State to notify the defendant (he being an agent of the State), and also the Board of State Auditors, to meet at the office of the State Treasurer for a final settlement; and that if, upon such proceedings, any balance was found due, a demand for payment must be made therefor; and, upon refusal, the Attorney General might then proceed to collect the balance.

Testimony was given on the trial by Mr. Hayden, prosecuting attorney for Marquette county, that in June, 1886, having heard from the Attorney General about the matter, he talked with the defendant upon the subject of the payment of these moneys, and the defendant protested that the State had nothing to do with it; that the defendant referred to the fact that some balance was demanded of him by the State, and stated that he had a notion to make a statement of the expenses through the Board of State Auditors. It appears, further, that the defendant from time to time, while acting upon the commission, drew from the funds in the hands of the commission certain sums of money for expenses, which were charged in the account of Mr. Kanter, as treasurer, and made a part of the claim presented and allowed by the Board of State Auditors. This suit was commenced in July, 1886, and defendant never presented any claim to the Board of State Auditors. Even if the statute referred to could be applied to the present case, it sufficiently appears that the defendant refused to recognize the State as interested in

this fund, and, on joining issue in the case, pleaded the general issue, denying all indebtedness.

It is further contended by defendant's counsel that if the defendant was responsible to the State, and not to the New Orleans exposition, for the unexpended balance of the $1,000, the plaintiff failed to make a case which justified the charge of the trial judge. The charge is as follows:

"Now, it is plain to see that the plaintiff in this case cannot ascertain what the defendant, Swineford, has done with this money. The facts are entirely within his knowledge. The law is reasonable, and does not require impossibilities; and I think, when a party who is intrusted with money to use for a specific purpose fails to account, or refuses to account, for it, that makes a *prima facie* case against him, for the donor of the money, or the party to whom it belongs, to recover it from him. It seems to me no hardship to say to him: 'The facts are within your knowledge; you can show whether or not you have disposed of this money in accordance with the provisions of the trust.' The other party cannot; and it seems to me that it is clear, under those circumstances, that the plaintiff has made out a case when it has shown a refusal on the part of the defendant to account for the trust funds under those circumstances."

This charge was followed by instructions to the jury to render a verdict for $750, with interest, being the amount received, less the $250 paid by defendant over to Davis. The case was presented to the court and jury, upon the evidence introduced by plaintiff; the defendant not offering testimony, and not testifying in his own behalf. The charge, as given, laid down the rule that, inasmuch as the State had proved the $1,000 in the hands of the defendant to be expended for a specific purpose, and the defendant had refused to account for it, the burden was therefore cast upon him to show that it had been so expended, or what disposition had been made of it.

The declaration contained five counts; the first three

setting out the circumstances of the defendant receiving the money, and an averment that he did not expend it as was his duty, and that he refuses to account, etc. The fourth charges a conversion of the whole $1,000. The fifth being the common counts in *assumpsit*, containing a count for money had and received.

Plaintiff's evidence shows this money in the hands of defendant, under an arrangement to pay it over to aid the Upper Peninsula exhibit. The exhibit to which it was applied, if at all, is the mineral, and it is shown that this was prepared by Mr. Davis, and the question is raised whether the defendant ever paid more than the $250 towards that. This $250, it is conceded, the defendant did pay. How far must the plaintiff proceed to make its case? The defendant's plea was a denial of all liability.

The general rule is that the party holding the affirmative of the issue takes the *onus* of proof, and that, in all instances where the right of action depends upon the negative averment, the party making it is charged with the burden of proving it. This is in obedience to the rule that the burden of proof is upon him who raises an issue which would be defeated if no proof was offered. There are, however, a multitude of instances where only slight proof of the affirmative of the issue is necessary to throw the burden of proving the negative upon the defendant; and there are also instances where the law presumes the affirmative of the issue. In an action on a promissory note, the mere production of the note, where its execution is not denied, is sufficient to establish the plaintiff's right of action; the law presuming non-payment from the fact of possession. If the defendant sets up payment, the burden is upon him to prove it. In actions upon book debt, the rule is different; and, unless a settlement is shown, and the amount due liquidated,

under the hands of the parties, the plaintiff is not only compelled to prove his account, but also that it has not been paid.

There are also exceptions to the general rule that he who takes the affirmative of an issue takes the burden of proof; as where the declaration sets up negative matter essential to the issue, which is peculiarly within the knowledge of the other party; and the general rule in such cases is stated to be that where the means of proving the negative are not within the power of the party alleging it, but all the proof on the subject is within the control of the opposite party, who, if the negative is not true, can disprove it at once, then the law presumes the truth of the negative averment, from the fact that such opposite party withholds, or does not produce, the proof, which is in his hands, if it exists, that the negative is not true. 2 Am. & Eng. Cyclop. Law, 652, tit. "Burden to Disprove Negative Averment;" *Railroad Co. v. Bacon,* 30 Ill. 347; *Insurance Co. v. Kearney,* 16 Q. B. 925; *Rex v. Burdett,* 4 Barn. & Ald. 95; *King v. Turner,* 5 Maule & S. 206; *State v. Crowell,* 25 Me. 171; *State v. Lipscomb,* 52 Mo. 32; *Sheldon v. Clark,* 1 Johns. 513; *State v. Richeson,* 45 Mo. 575.

I am satisfied, however, that this rule cannot be of universal application, but that each case must depend upon its own peculiar facts. Was the court in error in applying it in the present case ? The facts proven showed the money in his hands under an agreement to apply it to a specific purpose; and, from the circumstances surrounding the case, the only purpose to which it could have been applied was the payment over to Mr. Davis to aid the mineral exhibit. Davis being deceased, his books were put in evidence, showing a credit to the defendant of $250, and no more. The only person living at the time of the trial who had then any knowledge or infor-

mation as to whether he paid the balance over to Davis was the defendant himself. The declaration charged him with retaining it; and before the action was commenced, when talked with upon the subject by Mr. Hayden, he not only did not claim to have paid it to Davis, but claimed it was not the money of the State, and asserted that the State had no interest in it, though he had thought some of making out an account for expenses, and presenting it to the Board of State Auditors. He did not know whether he ought to or not, but would see his attorney, and ask him what he thought about it. If these facts did not appear, a presumption might arise that he had carried out the trust reposed in him; but this presumption is removed by the claim then made by him, and it now clearly appears that the only means of proving the fact of the payment rests with the defendant himself. He is in possession of full and plenary proof to disprove the negative averment, and entirely rebut the evidence arising from the circumstances surrounding the case adduced by the plaintiff upon the question. It would therefore be most reasonable and just that he should be required to adduce it, or, upon his failure to do so, to presume that it does not exist; which, of itself, would establish the negative.

Some other questions are raised, but we do not deem them of importance, and will not discuss them. The court was not in error in this charge, and the judgment must be affirmed, with costs.

The other Justices concurred.